# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| UTAH PETROLEUM ASSOCIATION, ) | |
| ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | |
| ) | Case No. 25-9507 |
| U.S. ENVIRONMENTAL ) | |
| PROTECTION AGENCY and ) | |
| LEE ZELDIN, Administrator, U.S. ) | |
| EPA, ) | |
| ) | |
|     Respondents. ) | |

---

## UTAH PETROLEUM ASSOCIATION'S MEMORANDUM BRIEF ON THE COURT'S JURISDICTION

---

Emily C. Schilling
Sydney J. Sell
Andrew P. Revelle
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
801-799-5753
ecschilling@hollandhart.com
sjsell@hollandhart.com
aprevelle@hollandhart.com

Kristina (Tina) R. Van Bockern
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
303-295-8107
trvanbockern@hollandhart.com

*Attorneys for Petitioner Utah
Petroleum Association*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF PRIOR AND RELATED APPEALS ......................... vii

GLOSSARY OF TERMS ........................................................................ ix

LIST OF ATTACHMENTS ...................................................................... x

INTRODUCTION ..................................................................................... 1

PROCEDURAL BACKGROUND .............................................................. 3

I.   UPA Pursued Judicial *and* Administrative Review and
     Stays. ............................................................................................ 3

II.  EPA Granted UPA's Petition for Reconsideration Under the
     APA, Not the CAA. ...................................................................... 6

III. EPA Declined to Stay the Final Rule Under the CAA and the
     APA. ............................................................................................. 8

IV.  EPA Has Not Taken Any Other Action Related to the Final
     Rule............................................................................................... 8

ARGUMENT .......................................................................................... 8

I.   UPA Has Standing Because the Final Rule Remains in
     Effect and Causes UPA's Members Injury. ................................. 10

     A.   The Final Rule Remains in Place. ...................................... 10

     B.   The Final Rule Continues to Injure UPA's Members. ......... 17

II.  UPA's Challenge to EPA's Final Rule is Ripe and Not
     Premature...................................................................................... 18

     A.   UPA Was Not Required to Petition for Reconsideration. .... 18

B.     The CAA Allows for Simultaneous Judicial Review and Reconsideration. .................................................................. 19

C.     CAA Section 7607(d)(7)(B)'s Exhaustion Requirement is Irrelevant. ............................................................................ 22

CONCLUSION ...................................................................................... 26

CERTIFICATE OF COMPLIANCE ...................................................... 28

CERTIFICATE OF SERVICE ............................................................... 28

ATTACHMENTS ................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Fuel & Petro. Mfrs. v. EPA,*
No. 20-1342, Doc. 1877327, Order (D.C. Cir. Dec. 28, 2020)
(unpublished) ..................................................................... 21

*Bennett v. Spear,*
520 U.S. 154 (1997).......................................................... 11

*City of Colo. Springs v. Solis,*
589 F.3d 1121 (10th Cir. 2009)................................... 19, 20

*Clifton Power Corp. v. FERC,*
294 F.3d 108 (D.C. Cir. 2002) ......................................... 20

*Ctr. for Biological Diversity v. Regan,*
691 F. Supp. 3d 1 (D.D.C. 2023) .................................... 16

*Darby v. Cisneros,*
509 U.S. 137 (1993)......................................................... 23

*EDF v. EPA,*
515 F. Supp. 3d 1135 (D. Mont. 2021)............................. 14

*Envtl. Def., Inc. v. EPA,*
509 F.3d 553 (D.C. Cir. 2007) ................................... 19, 24

*Envtl. Integrity Project v. EPA,*
425 F.3d 992 (D.C. Cir. 2005) ........................................ 23

*EPA v. EME Homer City Gen., L.P.,*
572 U.S. 489 (2014)......................................................... 25

*I.C.C. v. Bhd. of Locomotive Eng'rs,*
482 U.S. 270 (1987).................................................... 19, 20

*NRDC v. Wheeler,*
955 F.3d 68 (D.C. Cir. 2020) ..................................... 13, 15

*Ohio Forestry Ass'n v. Sierra Club,*
523 U.S. 726 (1998) ................................................................... 17, 18

*Ohio v. EPA,*
603 U.S. 279 (2024) .......................................................................... 21

*Oklahoma v. EPA,*
723 F.3d 1201 (10th Cir. 2013) ........................................................ 25

*Portland Cement Ass'n v. EPA,*
665 F.3d 177 (D.C. Cir. 2011) ......................................................... 21

*Schreiber v. Cuccinelli,*
981 F.3d 766 (10th Cir. 2020) ......................................................... 23

*Sierra Club v. EPA,*
551 F.3d 1019 (D.C. Cir. 2008) ...................................................... 21

*Sierra Club v. Ga. Power Co.,*
443 F.3d 1346 (11th Cir. 2006) ....................................................... 13

*Sierra Club v. Jackson,*
833 F. Supp. 2d 11 (D.D.C. 2012) ................................................... 15

*Sinclair Wyo. Ref. Co., LLC v. EPA,*
72 F.4th 1137 (10th Cir. 2023) ........................................................ 11

*Trujillo v. Gen. Elec. Co.,*
621 F.2d 1084 (10th Cir. 1980) .......................................................... 7

*Utah v. EPA*, No. 23-9509,
Doc. 010110895101, Order (10th Cir. July 27, 2023) ....................... 21

*Util. Air Regulatory Grp. v. EPA,*
744 F.3d 741 (D.C. Cir. 2014) ......................................................... 20

*W. Oil & Gas Ass'n v. EPA,*
633 F.2d 803 (9th Cir. 1980) .................................................. 7, 19, 24

*West Virginia v. EPA,*
577 U.S. 1126 (2016) ....................................................................... 21

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ................................................................ 18

*WildEarth Guardians v. EPA*,
   770 F.3d 919 (10th Cir. 2014) ............................................... 25

*Wis. Elec. Power Co. v. Costle*,
   715 F.2d 323 (7th Cir. 1983) ............................... 7, 14, 15, 16

## STATUTES

5 U.S.C. § 553(b)–(c) ................................................................. 2

5 U.S.C. § 553(e) ................................................................. x–24

5 U.S.C. § 702 ................................................................... 3, 16

5 U.S.C. § 704 ............................................................. 16, 19, 23

5 U.S.C. § 705 ................................................................... 3, 16

5 U.S.C. § 706 ......................................................................... 3

5 U.S.C. § 706(2) ..................................................................... 6

5 U.S.C. § 706(2)(A) ............................................................... 23

5 U.S.C. § 706(2)(D) ............................................................... 23

42 U.S.C. § 7511(a)(5) .............................................................. 7

42 U.S.C. § 7511(b)(2) .............................................................. 7

42 U.S.C. § 7607(b)(1) ................................... 2, 3, 9, 11, 12, 16, 19, 20, 24

42 U.S.C. § 7607(d) ............................................................ 7, 24

42 U.S.C. § 7607(d)(1) ................................................ 7, 8, 9, 15, 24

42 U.S.C. § 7607(d)(1)(A)–(U) ................................... 3, 19, 20, 24

42 U.S.C. § 7607(d)(1)(V) ....................................................... 24

42 U.S.C. § 7607(d)(7)(B) ................................................... 1–26

42 U.S.C. § 7607(d)(9) .................................................................. 6

## FEDERAL REGISTER

89 Fed. Reg. 101,483 (Dec. 16, 2024) ............................... viii–26

## RULES

10th Cir. Rule 27.3(B)(2)-(3) ........................................... vii, 28

Fed. R. App. P. 18(a)(2) ................................................................ 3

Fed. R. App. P. 25(c) ................................................................. 28

Fed. R. App. P. 27(d)(1)(E) ...................................................... 28

Fed. R. App. P. 32(f) ................................................................. 28

## OTHER AUTHORITIES

Senate Report No. 101-228 (1989) ........................................ 20

## STATEMENT OF PRIOR AND RELATED APPEALS

Pursuant to Tenth Circuit Rule 27.3(B)(2), Utah Petroleum Association ("UPA") provides this statement of prior and related appeals:

The following cases are pending in this Court and are related to UPA's petition for review because they also seek judicial review of the Environmental Protection Agency's ("EPA") same final action, titled "Denial of Request for Attainment Date Extension, Finding of Failure To Attain, and Reclassification of an Area in Utah as Moderate for the 2015 Ozone National Ambient Air Quality Standards," 89 Fed. Reg. 101,483 (Dec. 16, 2024) ("Final Rule"):

- *State of Utah, et al. v. EPA*, No. 25-9508 (10th Cir. Jan. 21, 2025);

- *Seven County Infrastructure Coalition, et al. v. EPA*, No. 25-9513 (10th Cir. Jan. 30, 2025); and

- *Ute Indian Tribe of the Uintah and Ouray Reservation v. EPA*, No. 25-9525 (10th Cir. Feb. 14, 2025).

The following cases are pending in the U.S. Circuit Court of Appeals for the District of Columbia Circuit and are also related to this action because they involve petitions to review EPA's Final Rule. These cases

were filed by the same petitioners in this Court but as protective petitions only:

- *State of Utah, et al. v. EPA*, No. 25-1061 (D.C. Cir. Feb. 14, 2025) (lead docket);

- *Utah Petroleum Association v. EPA*, No. 25-1063 (D.C. Cir. Feb. 14, 2025);

- *Seven County Infrastructure Coalition, et al. v. EPA*, No. 25-1068 (D.C. Cir. Feb. 14, 2025); and

- *Ute Indian Tribe of the Uintah and Ouray Indian Reservation v. EPA*, No. 25-1067 (D.C. Cir. Feb. 14, 2025).

The D.C. Circuit has since issued orders consolidating the petitions for review and holding them in abeyance pending resolution in this Court. *Utah*, No. 25-1061, Doc. 2101200, Order (D.C. Cir. Feb. 18, 2025); *id.*, Doc. 2108982, Order (D.C. Cir. April 2, 2025).

# GLOSSARY OF TERMS

| | |
|---|---|
| APA | Administrative Procedure Act |
| CAA | Clean Air Act |
| EPA | U.S. Environmental Protection Agency |
| Final Rule | *Denial of Request for Attainment Date Extension, Finding of Failure To Attain, and Reclassification of an Area in Utah as Moderate for the 2015 Ozone National Ambient Air Quality Standards*, 89 Fed. Reg. 101,483 (Dec. 16, 2024) |
| NAAQS | National Ambient Air Quality Standards |
| SIP | State Implementation Plan |
| Tribe | Ute Indian Tribe |
| UPA | Utah Petroleum Association |

# LIST OF ATTACHMENTS

No.                                    Title

1    *Am. Fuel & Petro. Mfrs. v. EPA*, No. 20-1342, Doc. 1877327, Order (D.C. Cir. Dec. 28, 2020) (unpublished)

2    *Am. Fuel & Petro. Mfrs. v. EPA*, No. 20-1342, Doc. 1871507, EPA's Response to Alyeska Pipeline Service Company's Motion to Stay Final Rule (D.C. Cir. Nov. 16, 2020)

3    *Utah v. EPA*, No. 23-9509, Doc. 010110895101, Order (10th Cir. July 27, 2023) (unpublished)

4    *Utah v. EPA*, No. 23-9509, Doc. 010110870022, The State of Utah's Motion to Stay the Final Rule of the U.S. Environmental Protection Agency (10th Cir. June 6, 2023) (Relevant Excerpts Only)

5    *Sierra Club v. EPA*, No. 02-1135, Doc. 777003, Order (D.C. Cir. Oct. 8, 2003) (unpublished)

UPA submits this brief to address the two jurisdictional issues—standing and ripeness—raised in the Court's March 31, 2025 Order, Dkt. #37.

## INTRODUCTION

The Court has jurisdiction to review EPA's Final Rule. Jurisdiction existed when UPA filed its petition for judicial review and jurisdiction continues to exist regardless of UPA's subsequently filed administrative petition requesting that EPA reconsider the Final Rule under the Clean Air Act ("CAA"), 42 U.S.C. § 7607(d)(7)(B), or repeal or amend the Final Rule through new rulemaking under Section 553(e) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(e), which EPA granted on February 25, 2025 under the APA, and not under the CAA.

*First*, UPA has standing to challenge the Final Rule. UPA has organizational standing because its members have standing. Dkt. #10 at 20–22. The Final Rule causes injury to UPA's members because their operations in the Uinta Basin are the subject of the government's regulation. *Id.* at 22. A favorable decision from the Court, including a stay of the Final Rule, would prevent those injuries. *Id.* The injury-in-fact,

causation, and redressability prongs of standing remain satisfied despite UPA's petition for new rulemaking and EPA's reconsideration.

The Final Rule became effective on January 15, 2025, 89 Fed. Reg. at 101,483, and EPA has not stayed, repealed, or withdrawn the Final Rule; the entirety of the Final Rule remains in place and in effect. Through APA Section 553(e), EPA may consider "the issuance, amendment, or repeal of" the Final Rule in a *new* rulemaking proceeding, 5 U.S.C. § 553(e), after providing opportunity for notice and comment, *id.* § 553(b)–(c). But the outcome of that rulemaking is unknown. Dkt. #22, ¶6. Absent a judicial stay, the obligations of the Final Rule remain in effect and UPA's members will continue to suffer immediate and ongoing irreparable harms caused by the Final Rule. Dkt. #10 at 34–36, 151–227.

*Second*, UPA's petition for judicial review is ripe and not premature. The CAA specifically contemplates that judicial review, and administrative reconsideration will proceed simultaneously without affecting the finality of EPA's action or ripeness for judicial review. 42 U.S.C. § 7607(b)(1), (d)(7)(B). Moreover, CAA Section 7607(d)(7)(B)'s exhaustion requirement, referenced by the Court in its Order, at 3, does not prevent review of any objection that UPA may raise before the Court

because UPA's objections are properly brought now under the APA and, in any event, CAA Section 7607(d)(7)(B)'s reconsideration procedures do not apply to the Final Rule. *See* 42 U.S.C. § 7607(d)(1)(A)–(U); Dkt. #23-3 at 2.

Thus, UPA's filing of petition for CAA reconsideration or APA rulemaking, and EPA's granting of that petition under the APA, has not altered UPA's standing to seek judicial review, rendered UPA's petition for review unripe, or deprived the Court of jurisdiction to consider any of UPA's claims.

## PROCEDURAL BACKGROUND

## I.   UPA Pursued Judicial *and* Administrative Review and Stays.

As the CAA contemplates and is common in challenges to EPA's CAA actions, UPA simultaneously sought review of and relief from the Final Rule through both judicial and administrative avenues.

On January 21, 2025, UPA timely filed its Petition for Judicial Review of the Final Rule under CAA Section 7607(b)(1) and APA Sections 702 and 706 within 60 days. *See* Dkt. #1. Then, on February 14, 2025, under Federal Appellate Rule 18(a)(2) and APA Section 705, UPA moved for a judicial stay. Dkt. #10.

Also on February 14, UPA submitted to EPA a petition for administrative reconsideration, rulemaking, and stay. *Id.* at 122–150. UPA sought reconsideration under both CAA Section 7607(d)(7)(B) and APA Section 553(e) to ensure EPA could properly frame its authority to correct its significant procedural and substantive errors in the Final Rule. *Id.* at 126, 133–34, 140. UPA requested that EPA stay the Final Rule under CAA Section 7607(d)(7)(B). *Id.* at 147.

UPA petitioned EPA for reconsideration of (1) the denial of the State's and the Tribe's requests for an attainment date extension for the Uinta Basin Marginal nonattainment area to attain the 2015 ozone National Ambient Air Quality Standard ("NAAQS"), (2) the determination that the area failed to attain the NAAQS by the Marginal attainment date, and (3) the reclassification of the area to Moderate nonattainment. *Id.* at 127, 133.

Under CAA Section 7607(d)(7)(B), EPA must reconsider a final action when: (1) the grounds for the objections were either "impracticable to raise" during the comment period or arose after the end of the comment period (but within the time specified for judicial review); and (2) those

objections are "of central relevance" to the final action. 42 U.S.C. § 7607(d)(7)(B).

When requesting CAA reconsideration, UPA argued that EPA arbitrarily and capriciously changed the standard for granting the extension of the attainment date *after* the comment period, denying UPA and other interested parties the opportunity to comment on the new standard. Dkt. #10 at 134–40. Thus, UPA properly raised the issue on reconsideration. *Id.*

When requesting APA reconsideration and new rulemaking, UPA argued that EPA (1) exceeded its statutory authority when it relied on factors which Congress had not intended it to consider—namely, ozone NAAQS exceedances occurring *after* the extension year—as a basis to deny the extension request; and (2) arbitrarily and capriciously failed to justify a rational connection between the facts found (i.e., the Uinta Basin's monitored ozone data and anomalous meteorological conditions) and denial of the extension. *Id.* at 140–46. Under APA Section 553(e), UPA properly relied on objections previously raised in comments to support the new rulemaking request.

Although briefing on the merits in this action has not occurred, UPA's Stay Motion raises three arguments under the CAA *and* the APA to demonstrate UPA is likely to succeed on the merits: (1) EPA exceeded its statutory authority in denying the extension request, (2) EPA arbitrarily and capriciously failed to justify a rational connection between the facts and the denial, and (3) EPA acted arbitrarily and capriciously when it relied on a new standard in the Final Rule for judging extension requests. *See id.* at 23–33 (citing 42 U.S.C. § 7607(d)(9), 5 U.S.C. § 706(2), and cases). UPA's Docketing Statement listed similar issues but also left open the possibility of raising other arguments as to why EPA's Final Rule "is otherwise arbitrary and capricious, an abuse of discretion, not in accordance with law, or in excess of statutory right" under the CAA and the APA. Dkt. #4 at 5–6.

## II.  EPA Granted UPA's Petition for Reconsideration Under the APA, Not the CAA.

On February 25, 2025, EPA responded to UPA's petition for reconsideration and rulemaking, as well as petitions filed by the State of Utah, the Tribe, and the Utah Congressional Delegation. Dkt. #22-3 at 1. While EPA stated it was "granting the petitions to reconsider," EPA did not grant CAA reconsideration. *Id.*

EPA explained that its actions in the Final Rule—the denial of a CAA Section 7511(a)(5) extension request and the Section 7511(b)(2) determination that the Uinta Basin failed to meet the ozone NAAQS—are "not among the types of actions listed" in CAA Section 7607(d)(1) that EPA can reconsider under Section 7607(d)(7)(B). Dkt. #22-3 at 2; *see also W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 812 (9th Cir. 1980) ("Section 7607(d) meticulously enumerates a list of actions to which its substantive provisions apply."). Therefore, EPA's options to reconsider the Final Rule were its "inherent authority to reconsider its decisions" and APA Section 553(e). Dkt. #22-3 at 1-2; *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980) ("Administrative agencies have an inherent authority to reconsider their own decisions."); *Wis. Elec. Power Co. v. Costle*, 715 F.2d 323, 325 (7th Cir. 1983) (EPA construed a CAA Section 7607(d)(7)(B) petition for reconsideration as an APA Section 553(e) petition after determining that Section 7607(d)(7)(B) did not apply).

EPA explained that it "intends to undertake a notice and comment action to reconsider the [Final Rule]." Dkt. #22-3 at 2.

## III.   EPA Declined to Stay the Final Rule Under the CAA and the APA.

EPA also denied UPA's request to stay the Final Rule under the CAA. *Id.* After determining that the Final Rule "is not among the types of actions listed" in CAA Section 7607(d)(1), EPA determined that it could not stay the Final Rule under Section 7607(d)(7)(B). *Id.* And, although UPA did not request a stay under the APA, EPA added that "the APA does not grant the EPA authority to stay the [Final Rule] because its effective date has passed." *Id.*

## IV.   EPA Has Not Taken Any Other Action Related to the Final Rule.

EPA has not taken any other action to stay, repeal or withdraw the Final Rule since issuing its letter in February. Nor has EPA begun the notice and comment process on its APA Section 553(e) reconsideration. The Final Rule and associated obligations remain in effect.

## ARGUMENT

The CAA's judicial review provision under which UPA filed its petition for review contemplates that parties seeking judicial review of EPA's final actions within the 60-day filing deadline will concurrently seek administrative reconsideration. It happens all the time: Circuit Courts of Appeals across the country review EPA's actions while

reconsideration is pending precisely because the CAA declares that such reconsideration "shall not affect the finality of such rule or action for purposes of judicial review … and shall not postpone the effectiveness of such rule or action." 42 U.S.C. § 7607(b)(1).

This case is no different. The Final Rule—which was a "final action" at the time UPA filed its petition for judicial review—remains a final action in full force and effect today. It has immediate legal consequences for UPA's members, the State of Utah, the Tribe, and other regulated entities operating in the Uinta Basin. Therefore, UPA has standing to challenge the Final Rule.

And EPA's Final Rule remains ripe for review despite UPA seeking and EPA granting reconsideration under the APA. There are numerous examples of courts granting stays of CAA final rules where reconsideration was sought (and sometimes granted). In addition, because (a) UPA has raised issues for judicial review arising under both the CAA and the APA, and (b) the Final Rule was not an action listed under CAA Section 7607(d)(1), Section 7607(d)(7)(B)'s exhaustion requirement does not apply to limit UPA's arguments on judicial review.

## I.    UPA Has Standing Because the Final Rule Remains in Effect and Causes UPA's Members Injury.

The Court's Order asks two questions related to standing: (1) does "the Final Rule remain in place," and (2) if so, how does it "impact [UPA] pending the EPA's reconsideration process." Order at 3. The answers are simple: the entire Final Rule remains in place and UPA's members will suffer the harms described in UPA's Stay Motion pending reconsideration. Dkt. #10 at 22, 34–36, 151–227. Thus, EPA's reconsideration has not changed UPA's standing. *Id.* at 20–22.

### A.    The Final Rule Remains in Place.

The Final Rule is final and in effect. EPA published its "final rule" in the Federal Register on December 16, 2024 after notice-and-comment rulemaking. 89 Fed. Reg. at 101,483. The Final Rule (1) denied an extension of the attainment date for the Uinta Basin nonattainment area; and (2) determined that the area did not attain the ozone NAAQS by the applicable deadline such that the area "will be reclassified by operation of law to 'Moderate' nonattainment … on the effective date of this final rule." *Id.* at 101,483. As reflected in the notice, "[t]his rule is effective on January 15, 2025." *Id.*

It does not appear that the Court questions the finality or effectiveness of EPA's action at the time UPA filed its petition on January 21, 2025. *See* Order at 2–3 (raising concerns with "procedural history" … "[a]fter petitioners filed their petitions for review with this court"). Nor would there be any basis to do so.

The CAA links EPA's "final action" with publication in the Federal Register. *See* 42 U.S.C. § 7607(b)(1) (judicial review of a "final action" must be filed within 60 days "from the date notice … appears in the Federal Register."). The term "final action" under the CAA is synonymous with "final action" under the APA. *Sinclair Wyo. Ref. Co., LLC v. EPA*, 72 F.4th 1137, 1143 n.3 (10th Cir. 2023). An agency action is final if it "mark[s] the consummation of the agency's decisionmaking process" and is an action from "which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 1143 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Here, EPA's Final Rule was final when UPA filed its petition for review on January 21, 2025. Publication followed notice-and-comment rulemaking, and EPA refers to its action as "final" thirteen times. *See generally* 89 Fed. Reg. 101,483. EPA's Final Rule also had immediate legal consequences for EPA, the State, and

operators in the Uinta Basin on the effective date. *Id.* at 101,484; Dkt. #10 at 34–36; *see Utah v. EPA,* No. 25-9508, Dkt. #42 at 21–22, 64–67 (10th Cir. April 14, 2025).

UPA's filing of a petition for reconsideration under the CAA and the APA, and EPA's grant of that petition under the APA, does not change the finality or effectiveness of the Final Rule, *see* Order at 2–3, particularly where EPA expressly *denied* UPA's request for a CAA stay.

As an initial matter, the CAA's text confirms that the Final Rule remains final and in effect. CAA Section 7607(b)(1) states that the "filing of a petition for reconsideration … shall not postpone the effectiveness of such rule or action." EPA's Final Rule incorporated this statutory language. 89 Fed. Reg. at 101,488. This CAA section does not depend on whether a party seeks reconsideration under the CAA, the APA, or both. But if reconsideration is granted under the CAA, then CAA Section 7607(d)(7)(B) reiterates that "[s]uch reconsideration shall not postpone the effectiveness of the rule."

Court precedent likewise confirms that the mere filing of a petition for reconsideration, or even an agency's decisions to grant reconsideration, does not stay or repeal a final rule. Because UPA

petitioned for reconsideration and new rulemaking under both the CAA and the APA, but EPA ultimately granted reconsideration under APA Section 553(e), UPA will focus its discussion on cases involving this same or similar fact pattern.

APA Section 553(e) allows an interested party to petition an agency to reconsider or amend an existing rule or regulation through *new* rulemaking. 5 U.S.C. § 553(e). But that new rulemaking process, even if granted, does not stay, repeal, or otherwise alter the finality of the existing rule or regulation. Instead, during the rulemaking, EPA's existing rule "will continue to govern unless and until the agency issues a new rule." *NRDC v. Wheeler*, 955 F.3d 68, 79 (D.C. Cir. 2020); *EDF v. EPA*, 515 F. Supp. 3d 1135, 1145 (D. Mont. 2021) (during new rulemaking, "[p]etitioners would remain subject to the [existing EPA] regulation in the interim"); *see also Sierra Club v. Ga. Power Co.*, 443 F.3d 1346, 1357 & n.17 (11th Cir. 2006) (explaining that an EPA-approved SIP "remains the law" even though party had petitioned EPA under APA Section 553(e) to require SIP amendment).

This makes imminent sense. "[A]ny agency action is always subject to displacement by a future rulemaking." *NRDC*, 955 F.3d at 80. "If the

mere possibility of displacement rendered a governing agency rule non-final for purposes of judicial review, no rule would ever count as final." *Id.* Thus, where judicial review of a final CAA rule is pending but "EPA has indicated that it intends to undertake a further rulemaking at some point but has not formally initiated the process," *id.* at 79, that intent is insufficient to alter the finality of the rule under review, *id.* at 80.

As a result, when a party petitions for reconsideration of a CAA final action through rulemaking under APA Section 553(e), the outcome can sometimes be that "there are two distinct administrative decisions under review"—the original EPA action and the new EPA action following reconsideration. *See Wis. Elec. Power Co.*, 715 F.2d at 325. For example, in *Wisconsin Electric Power*, EPA issued a final rule designating portions of Milwaukee as nonattainment areas for sulfur dioxide. *Id.* Wisconsin Electric Power Company ("WEPCO") filed a petition for judicial review. *Id.* While the petition was pending in the Seventh Circuit, WEPCO petitioned EPA under CAA Section 7607(d)(7)(B) for reconsideration. *Id.* Upon concluding the final rule was not the type of action subject to reconsideration under the CAA, EPA construed WEPCO's reconsideration petition as a request for rulemaking

under APA Section 553(e). *Id.* By agreement, EPA and WEPCO then requested the Seventh Circuit to hold the petition for judicial review in abeyance until EPA acted on the petition for rulemaking. *Id.* EPA subsequently determined it would *not* institute new rulemaking to designate Milwaukee as an attainment area based on new data and modeling. *Id.* WEPCO filed a second petition for judicial review, this time of EPA's decision not to initiate new rulemaking. *Id.* The Seventh Circuit consolidated the two petitions for review but noted that the court was reviewing "two distinct administrative decisions": (1) the original final rule, which the court noted EPA could have repealed only through notice and comment rulemaking, and (2) EPA's decision denying WEPCO's APA Section 553(e) rulemaking petition. *Id.* at 325, 328 n.3.

Similarly, here, EPA's Final Rule is effective and "will continue to govern unless and until the agency issues a new rule." *NRDC,* 955 F.3d at 79. EPA declined to stay the Final Rule pending reconsideration under either the CAA or the APA. Dkt. #22-3 at 2. That was correct. After concluding that EPA's actions in the Final Rule were "not among the types of actions listed" in CAA Section 7607(d)(1), EPA could not stay the Final Rule under Section 7607(d)(7)(B). Dkt. #22-3 at 2; *Sierra Club v.*

15

*Jackson*, 833 F. Supp. 2d 11, 24 (D.D.C. 2012) ("Section 307(d)(7)(B) provides [that] … stays may only be for purposes of reconsideration.").

Further, UPA did not request, and EPA did not grant, a stay of the Final Rule under the APA because the Final Rule went into effect on January 15, 2025. *See* Dkt. #22-3 at 2. APA Section 705 "does not permit an agency to suspend, without notice and comment, a rule that is already in effect." *Ctr. for Biological Diversity v. Regan*, 691 F. Supp. 3d 1, 8 (D.D.C. 2023).

Because EPA did not stay the Final Rule and has not taken any regulatory action that changes the effectiveness of the Final Rule, it remains in place pending EPA's reconsideration. As such, the Court retains jurisdiction to review EPA's Final Rule because it is a "final action" subject to review under CAA Section 7607(b)(1) and APA Sections 702 and 704.

Like the parties in *Wisconsin Electric Power*, EPA and UPA have agreed to hold the merits of UPA's petition for review in abeyance—after the Court has ruled on UPA's Stay Motion—in an effort to conserve the parties' and judicial resources while EPA reconsiders the Final Rule. Dkt. #23, #34. But, because "EPA cannot prejudge the outcome of the

reconsideration" process, Dkt. # 22-1, ¶6, it is possible that EPA may reject UPA's and other petitioners' requests to change its mind such that judicial review may proceed. While that is not the outcome UPA hopes to see, it reinforces the point that EPA's Final Rule remains a "final action" subject to judicial review regardless of EPA's future rulemaking.

**B.    The Final Rule Continues to Injure UPA's Members.**

Absent a judicial stay, UPA's members must comply with the Final Rule and, as a result, will suffer the immediate and ongoing irreparable harms detailed in UPA's Stay Motion. Dkt. #10 at 22, 34–36, 151–227. EPA's reconsideration of the Final Rule does not alleviate those harms; the Final Rule remains in effect for the reasons discussed in the previous section.

As such, UPA's members' harms and UPA's standing to seek review of the Final Rule has not changed since UPA detailed its standing in its Stay Motion. Dkt. #10 at 20–22. UPA will not repeat those details here. However, in the context of the Court's questions concerning the finality of EPA's Final Rule and the harms arising from it, UPA emphasizes here that Congress, in the CAA, specifically "provided for pre-implementation judicial review." *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737

(1998). By requiring petitioners to seek judicial review within 60 days of publication in the Federal Register, the CAA "permit[s] judicial review directly, even before the concrete effects normally required for APA review are felt." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 479–80 (2001) (internal quotations omitted). Thus, although UPA's Stay Motion and declarations identify UPA's members' harms arising from compliance with the Final Rule, including the costs and burden of altering their operations and installing control equipment to comply with the State of Utah's newly required but not yet finalized SIP, Dkt. #10 at 22, 34–36, those harms are sufficient under the CAA's pre-enforcement standard. *Ohio Forestry*, 523 U.S. at 737; *Whitman*, 531 U.S. at 479–80.

## II.   UPA's Challenge to EPA's Final Rule is Ripe and Not Premature.

The Court's Order, at 3, questions whether UPA's petition for review was premature at the time it was filed or if it was rendered premature by the filing of the petition for reconsideration. The answer to both questions is "no." UPA's petition for judicial review is ripe.

### A.   UPA Was Not Required to Petition for Reconsideration.

The filing of a petition for reconsideration under CAA Section 7607(d)(7)(B) is not a prerequisite to filing a petition for judicial review

18

under Section 7607(b)(1). The reconsideration procedures of CAA Section 7607(d)(7)(B) apply to only a finite list of EPA's actions. *See* 42 U.S.C. § 7607(d)(1)(A)–(U); *W. Oil & Gas Ass'n*, 633 F.2d at 812. Yet judicial review is available for almost any EPA "final action," and Section 7607(b)(1) does not require reconsideration. *See* 42 U.S.C. § 7607(b)(1). In addition, APA Section 704 "has long been construed" by the Supreme Court and this Court to relieve parties from the requirement of petitioning for rehearing or reconsideration *before* seeking judicial review unless specifically required to do so by statute. *I.C.C. v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284–85 (1987); *City of Colo. Springs v. Solis*, 589 F.3d 1121, 1130 (10th Cir. 2009). Here, where EPA's actions in the Final Rule were not among those listed in Section 7607(d)(1)(A)–(U), the CAA's reconsideration procedures did not apply, Dkt. #22-3 at 2. Thus, UPA was not required to petition for reconsideration before seeking judicial review of EPA's Final Rule. *See Envtl. Def., Inc. v. EPA*, 509 F.3d 553, 561 (D.C. Cir. 2007).

## B.   The CAA Allows for Simultaneous Judicial Review and Reconsideration.

UPA's submission of its petition for reconsideration after filing its petition for judicial review did not render UPA's judicial action

premature. CAA Section 7607(b)(1) specifically authorizes actions for judicial review and petitions for administrative reconsideration to proceed simultaneously without affecting the ripeness for review. 42 U.S.C. § 7607(b)(1). Indeed, Senate Report No. 101-228, at 3755 (1989), which accompanies the 1990 CAA Amendments, "confirms that the purpose of that provision was to 'overrule,' in the context of the Clean Air Act, [older precedent holding] that a pending petition for reconsideration deprives an agency action of finality." *Util. Air Regulatory Grp. v. EPA*, 744 F.3d 741, 745-47 (D.C. Cir. 2014) (quoting Senate Report). The cases the Court cites in its Order finding agency action unripe where a petition for reconsideration has been filed, *see* Order at 3, are inapplicable because they are not CAA cases.[1]

On the other hand, there are numerous examples of courts exercising jurisdiction—and staying EPA's final actions—after petitions for reconsideration are filed with EPA, and even after EPA has granted

---

[1] *City of Colo. Springs*, 589 F.3d 1121 (Urban Mass Transportation Act); *Clifton Power Corp. v. FERC*, 294 F.3d 108 (D.C. Cir. 2002) (Federal Power Act); *I.C.C.*, 482 U.S. 270 (Hobbs Act).

those petitions. *See, e.g.*, *Am. Fuel & Petro. Mfrs. v. EPA*, No. 20-1342, Doc. 1877327, Order (D.C. Cir. Dec. 28, 2020) (unpublished) (granting stay of EPA CAA final rule despite EPA granting petition for reconsideration) (Att. 1); *id.,* Doc. 1871507, EPA Resp. to Stay Mtn. at 2–3 (D.C. Cir. Nov. 16, 2020) (explaining EPA did not oppose judicial stay because it was granting reconsideration) (Att. 2); *see also Ohio v. EPA*, 603 U.S. 279 (2024) (granting stay of EPA CAA final rule where petitions for reconsideration were filed and pending during litigation); *West Virginia v. EPA*, 577 U.S. 1126 (2016) (same); *Portland Cement Ass'n v. EPA*, 665 F.3d 177 (D.C. Cir. 2011) (same); *Utah v. EPA*, No. 23-9509, Doc. 010110895101, Order (10th Cir. July 27, 2023) (unpublished) (same) (Att. 3); *id.*, Doc. 010110870022, Utah Stay Mtn. at 17–18 (10th Cir. June 6, 2023) (explaining Utah was seeking judicial stay because EPA had not responded to filed petition for reconsideration) (Att. 4).

There is zero basis for Intervenor-Respondents' claim that, after EPA grants reconsideration, courts follow a "well-established approach" of putting the case in abeyance and "not staying the underlying rule." *See* Dkt. #39 at 4. Intervenor-Respondents cite four cases as examples, *id.* at 3–5, but *Sierra Club v. EPA*, 551 F.3d 1019 (D.C. Cir. 2008), is the *only*

case in which a judicial stay motion was even filed. So, of course, a court would not *sua sponte* stay a final agency action. And the stay in *Sierra Club* was denied because the petitioner did not prove irreparable harm, not because of the pending reconsideration. *See id.*, Doc. 777003 (Att. 5).

### C.    CAA Section 7607(d)(7)(B)'s Exhaustion Requirement is Irrelevant.

The Court's concern, *see* Order at 4, over whether certain objections to EPA's Final Rule were raised during the comment period or for the first time in UPA's petition for reconsideration, for purpose of satisfying CAA Section 7607(d)(7)(B)'s exhaustion requirement, is irrelevant for several reasons.

*First*, UPA's three main objections to the Final Rule are all ripe for review under the CAA *and* the APA without awaiting EPA's reconsideration (i.e., without exhaustion of remedies before EPA). UPA's CAA and APA arguments that EPA exceeded its statutory authority and acted arbitrarily and capriciously when it failed to justify a rational connection between the facts and the extension date denial, Dkt. #10 at 23–33, were raised in UPA's comments, *id.* at 51, 54–55, 57.

But UPA could not have commented on its third APA argument—that EPA acted arbitrarily and capriciously when it applied a new

standard for judging extension requests—because EPA did not announce the new standard until the Final Rule. *Id.* at 27–28; Dkt. #4 at 5–6. Under the APA, EPA's arbitrary and capricious procedural violation is properly before the Court without further exhaustion. 5 U.S.C. § 706(2)(A), (D); *Envtl. Integrity Project v. EPA*, 425 F.3d 992, 993 (D.C. Cir. 2005) (immediately reviewing EPA's notice and comment violations under the APA). There is no need for the Court to await EPA's new rulemaking before concluding UPA has exhausted its administrative remedies. In cases like this, "where the APA applies," exhaustion "is a prerequisite to judicial review only when *expressly required* by statute … and the administrative action is made *inoperative pending that review.*" *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (emphasis added). Where exhaustion is optional, "[c]ourts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under [APA Section 704]." *Id.*[2] As discussed above, the

---

[2] This Court has distinguished *Darby* in situations where a party "actually elected to undertake such an ["optional"] appeal." *Schreiber v. Cuccinelli*, 981 F.3d 766, 786 (10th Cir. 2020). Where the party makes that election and the result is a "new and distinct final agency action," *then* on review of the *new* final action, the court may inquire if the party exhausted the issue during the optional appeal. *Id.* at 787.

Final Rule is final, EPA has not rendered it "inoperative," and CAA Section 7607(b)(1) does not require a petitioner to pursue administrative reconsideration as a prerequisite to judicial review—it's optional. In addition, as discussed next, CAA Section 7607(d)(7)(B) does not require a petition for reconsideration of *this* Final Rule because Section 7607(d)(7)(B) does not apply. Thus, UPA's petition for judicial review is ripe now.

*Second*, UPA alternatively requested, and EPA granted reconsideration under APA Section 553(e), not the CAA, because the statutory authority for EPA's Final Rule is not listed in CAA Section 7607(d)(1)(A)–(U). Dkt. #22-3 at 2. As such, CAA Section 7607(d)(7)(B) cannot apply. *See Envtl. Def., Inc.*, 509 F.3d at 561 (where EPA's action was not listed in Section 7607(d)(1) and EPA acted to make Section 7607(d) applicable through 7607(d)(1)(V) only upon promulgation of the final rule, the court held Section 7607(d)(7)(B) "does not require that a procedural issue first be presented to the agency"); *W. Oil & Gas Ass'n*, 633 F.2d at 812 (where EPA's action "is not one of the enumerated provisions and an extension of section 7607(d) to cover it is not within

24

[the court's] power," the "[APA] remains the sole standard by which the EPA's action is to be judged").

*Third*, even if the Court were to find that CAA Section 7607(d)(7)(B) applies, that provision of the CAA would not deprive the Court of jurisdiction to consider UPA's objection to EPA's new standard. Section 7607(d)(7)(B) is *not* a jurisdictional bar. Instead, it merely requires exhaustion of issues. *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 511–12 (2014). Although the Tenth Circuit in *Oklahoma v. EPA*, 723 F.3d 1201, 1214–15 (10th Cir. 2013), characterized Section 7607(d)(7)(B) as jurisdictional, the following year in *EME Homer*, the Supreme Court rejected such a reading:

> This Court has cautioned against "profligate use" of the label "jurisdictional." A rule may be "mandatory," yet not "jurisdictional," we have explained. Section 7607(d)(7)(B), we hold, is of that character. It does not speak to a court's authority, but only to a party's procedural obligations.

752 U.S. at 512 (citations omitted). Then, six months later, the Tenth Circuit confirmed that "satisfaction of § 7607(d)(7)(B) was mandatory, but not jurisdictional." *WildEarth Guardians v. EPA*, 770 F.3d 919, 933 (10th Cir. 2014) (citing *EME Homer*, 752 U.S. at 511). But here, where EPA's arbitrary and capricious actions deprived UPA of the opportunity

to comment on a new standard, exhaustion would have been impossible and, thus, not required.

*Last*, UPA *could* separately petition for judicial review of EPA's denial of reconsideration and then that petition could be consolidated with this challenge. 42 U.S.C. § 7607(d)(7)(b) (petitioner "*may* seek review of such refusal" to reconsider (emphasis added)). But, because the statute uses the term "may," there is no requirement that UPA also seek review of EPA's denial of CAA reconsideration to perfect this judicial review action.

Accordingly, UPA's petition for review was ripe when filed and it remains ripe after EPA granted reconsideration.

## CONCLUSION

The Court has jurisdiction over UPA's petition to review EPA's Final Rule.

Dated: April 14, 2025.

Respectfully submitted,

*/s/ Kristina (Tina) R. Van Bockern*
Kristina (Tina) R. Van Bockern
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107

trvanbockern@hollandhart.com

Emily C. Schilling
Sydney J. Sell
Andrew P. Revelle
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753
ecschilling@hollandhart.com
sjsell@hollandhart.com
aprevelle@hollandhart.com

*Attorneys for Petitioner Utah
Petroleum Association*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the format and word limit of 10th Cir. Rule 27.3(B)(2)-(3) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,197 words. This document also complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated: April 14, 2025

*/s/ Kristina (Tina) R. Van Bockern*

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to Fed. R. App. P. 25(c), that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

Dated: April 14, 2025

*/s/ Kristina (Tina) R. Van Bockern*

# ATTACHMENTS

34567494

**Attachment 1**

*Am. Fuel & Petro. Mfrs. v. EPA*, No. 20-1342, Doc 1877327,
Order (D.C. Cir. Dec. 28, 2020) (unpublished)

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 20-1342**

**September Term, 2020**

**EPA-85FR40740**

**Filed On:** December 28, 2020

American Fuel & Petrochemical Manufacturers,
et al.,

      Petitioners

    v.

Environmental Protection Agency,

      Respondent

-------------------------------

California Communities Against Toxics, et al.,
      Intervenors
-------------------------------

Consolidated with 20-1345, 20-1347


**BEFORE:**   Rogers, Tatel, and Katsas, Circuit Judges

### O R D E R

Upon consideration of the motion to stay, the responses thereto, and the reply, it is

**ORDERED** that the motion to stay be granted.  Petitioner Alyeska Pipeline Service Company ("Alyeska") has satisfied the stringent requirements for a stay pending court review.  See Nken v. Holder, 556 U.S. 418, 434 (2009); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2020).

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 20-1342**                                    **September Term, 2020**

      The amendment of 40 C.F.R. § 63.2346(i) to eliminate the safety device exemption provision; the inclusion of a new work practice standard for bypass periods, codified at 40 C.F.R. §§ 63.2378(e)(3) and (4); and the inclusion of a new work practice standard for tank emptying and degassing, codified at 40 C.F.R. § 63.2346(a)(6) are stayed only as to their application to Alyeska.  <u>See</u> 5 U.S.C. § 705 (court may issue a stay "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury").

<u>**Per Curiam**</u>

                                   **FOR THE COURT:**
                                   Mark J. Langer, Clerk

BY:    /s/
            Amanda Himes
            Deputy Clerk

**Attachment 2**

*Am. Fuel & Petro. Mfrs. v. EPA,* No. 20-1342, Doc. 1871507,
EPA's Response to Alyeska Pipeline Service Company's
Motion to Stay Final Rule (D.C. Cir. Nov. 16, 2020)

NOT YET SCHEDULED FOR ORAL ARGUMENT

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

|  |  |  |
|---|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, et al., | ) ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 20-1342 (and consolidated cases) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) | |
| Respondent. | ) ) | |

_____

**EPA'S RESPONSE TO ALYESKA PIPELINE SERVICE
COMPANY'S MOTION TO STAY FINAL RULE**

The U.S. Environmental Protection Agency ("EPA") submits this

response to Alyeska Pipeline Service Company's ("Alyeska's") motion to

stay.  ECF No. 1865385 (Oct. 7, 2020) ("Motion").  Alyeska moves to

stay three provisions of EPA's final rule entitled "National Emission

Standards for Hazardous Air Pollutants: Organic Liquids Distribution

(Non-Gasoline) Residual Risk and Technology Review," 85 Fed. Reg.

40,740 (July 7, 2020) ("Final Rule").   Alyeska seeks to stay the

following provisions: 1) the amendment of 40 C.F.R. § 63.2346(i) to

eliminate, as of July 2023, a safety device exemption provision; 2) the inclusion of a new work practice standard for bypass periods during planned routine maintenance of a control device, codified at 40 C.F.R. §§ 63.2378(e)(3) and (4); and 3) the inclusion of a new work practice standard for tank emptying and degassing for tanks with a capacity up to 50,000 gallons, codified at 40 C.F.R. § 63.2346(a)(6).

Previously, Alyeska submitted an administrative petition for reconsideration, rulemaking, and a stay of the Final Rule. Motion, Attachment 2. Alyeska also provided EPA with voluminous supplemental materials in support of that petition. Upon review of the materials submitted thus far, EPA intends to grant reconsideration as a matter of discretion voluntarily exercised by EPA. Declaration of Anne Austin ("Austin Decl.") ¶¶ 11–12, Attachment 1. EPA will take comment on any proposed revisions to the organic liquids distribution standards before issuing a new rule. *Id.* ¶ 12.

In light of EPA's intent to grant reconsideration of Alyeska's administrative petition, and in recognition of Alyeska's representation that it will suffer irreparable harm from the nonrecoverable compliance costs that it must incur prior to resolution of this litigation, EPA does

not oppose a limited stay of the Final Rule.  Specifically, EPA does not

oppose a stay, as applied to Alyeska only, of the three provisions

challenged by Alyeska until the earlier of (1) the conclusion of EPA's

consideration of Alyeska's administrative petition, or (2) a judgment on

the merits by this Court.  Staying these provisions as to Alyeska only is

reasonable because, according to its representations, Alyeska faces

unique challenges to compliance because of its operations in a remote

part of Alaska.  *See* Motion 2, 4–5, 16–19.  Limiting the stay to Alyeska,

rather than staying the provisions as to all regulated entities, is within

the equitable discretion of this Court to fashion narrow preliminary

relief.

In not opposing this relief, however, EPA takes no position on any

aspects of Alyeska's motion, including the merits of Alyeska's

underlying arguments regarding the Final Rule.

Accordingly, EPA is unable to represent its ultimate conclusions

on these issues at this time, and it does not make any concessions here

as to issues that would be addressed by the Court should merits briefing

be necessary.

Dated:  November 16, 2020.

                                        Respectfully submitted,

                                        /s/ Sarah Izfar
                                        JONATHAN D. BRIGHTBILL
                                        *Principal Deputy Assistant Attorney*
                                        *General*
                                        ERIC GRANT
Of Counsel:                             *Deputy Assistant Attorney General*
                                        TSUKI HOSHIJIMA
                                        SARAH IZFAR
LEA ANDERSON                            *Attorneys*
PAUL VERSACE                            Environment and Natural Resources
*Counsel*                               Division
U.S. Environmental Protection           U.S. Department of Justice
Agency

                                        4

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.    Parties and Amici

In addition to the parties listed in the Brief for Petitioner Alyeska, the following parties are petitioners in these consolidated cases:

- American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and American Chemistry Council, Petitioners in Case No. 20-1342
- California Communities Against Toxics, Coalition for a Safe Environment, and Sierra Club, Petitioners in Case No. 20-1345

The following parties are intervenors in these consolidated cases:

American Chemistry Council, American Petroleum Institute, American Fuel & Petrochemical Manufacturers, Sierra Club, Coalition for a Safe Environment, and California Communities Against Toxics.

## B.    Rulings Under Review

References to the rulings at issue appear in the Brief for Alyeska.

## C.    Related Cases

There are no related cases within the meaning of Circuit Rule 28(a)(1)(C).

/s/ *Sarah Izfar*

SARAH IZFAR
Counsel for Respondent

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 467 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

/s/ *Sarah Izfar*
SARAH IZFAR

Counsel for Respondent

ATTACHMENT 1

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERES, et al. <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY <br><br> Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No. 20-1342 (and consolidated cases) |

**DECLARATION OF ANNE AUSTIN**

1.      I, Anne Austin (formerly Idsal), under penalty of perjury, affirm and declare that the following statements are true and correct to the best of my knowledge and belief, and are based on my own personal knowledge or on information contained in the records of the United States Environmental Protection Agency ("EPA") or supplied to me by EPA employees under my supervision.

2.      I am Principal Deputy Assistant Administrator for EPA Office of Air and Radiation ("OAR"), which is located at 1200 Pennsylvania Avenue, NW, Washington, D.C. 20460.

3.     OAR is the EPA headquarters-based unit with primary responsibility for administration of the Clean Air Act ("CAA"). As the Principal Deputy Assistant Administrator for OAR, I serve as the principal advisor to the Administrator of EPA on matters pertaining to air and radiation programs, and I am responsible for managing these programs, including: program policy development and evaluation; development of emissions standards; program policy guidance and overview; and technical support and evaluation of regional air and radiation program activities.

4.     As part of my duties as Principal Deputy Assistant Administrator of OAR, I oversee the development and implementation of regulations, policy, and guidance under section 112 of the CAA, 42 U.S.C. § 7412, the National Emission Standards for Hazardous Air Pollutants program, the basis for the final rule that is the subject of this litigation.

5.     I have relied upon my staff to provide the factual information presented in this declaration.

6.     EPA issued standards pursuant to CAA sections 112(d)(2) and (3) for the Organic Liquids Distribution (Non-Gasoline) source category ("OLD") for major sources (40 CFR part 63, subpart EEEE) in 2004 (69 Fed. Reg. 5,038) and amended these standards in 2006 (71 Fed. Reg. 42,898) and 2008 (73 Fed. Reg. 21,825, 73 Fed. Reg. 40,977). On July 7, 2020, EPA published the final residual

risk and technology review rulemakings for the OLD source category pursuant to CAA sections 112(f)(2) and 112(d)(6), respectively (the "2020 OLD Rule").  In the same rulemaking, EPA revised the former OLD rule to address this Court's vacatur of provisions that exempt emissions of hazardous air pollutants from emission standards during periods of startup, shutdown, and malfunction (SSM).  *Sierra Club v. EPA*, 551 F.3d 1019 (D.C. Cir. 2008).  Existing sources have until July 7, 2023, to comply with the 2020 OLD Rule.

7.     The 2004 OLD rule established emission standards applicable to hazardous air pollutants from OLD facilities located at major sources. The OLD standards apply to OLD facility hazardous air pollutant emission points including storage tanks, transfer operations, and equipment leaks, and the 2004 OLD rule included exemptions from the standards during SSM periods.

8.     Pursuant to section 307(d)(7)(B) of the CAA, American Fuel & Petrochemical Manufacturers, Alyeska Pipeline Company, and Earthjustice ("Petitioners") submitted petitions for administrative reconsideration of the OLD rule. Petitioner Alyeska claimed, among other things, that the public was not afforded a reasonable opportunity to comment on certain aspects of the OLD rule.

9.     Petitioners American Fuel & Petrochemical Manufacturers and Alyeska Pipeline Company specifically requested that EPA reconsider the 2020 OLD rule's revision or elimination of certain SSM-related provisions. The 2020 OLD rule's

revision or elimination of certain SSM-related provisions is also at issue in the motion for stay filed by Alyeska.

10.    I am familiar with the issues raised in Alyeska's motion for stay. Specifically, Alyeska has requested this Court stay three SSM-related actions taken in the 2020 OLD Rule: 1) repeal of the safety device exemption provision previously codified at 40 C.F.R. § 63.2346(i); 2) the inclusion of new work practice standards for bypass periods during planned routine maintenance of a control device codified at 40 C.F.R. §§ 63.2378(e)(3) and (4); and 3) the inclusion of a new work practice standard for tank emptying and degassing for tanks with a capacity up to 50,000 gallons codified at 40 C.F.R. § 63.2346(a)(6).

11.    EPA has reviewed the information that Alyeska submitted with its petition for reconsideration and its motion for stay of the three SSM-related provisions. EPA has also had ongoing discussions with Alyeska for additional information, specifically involving the company's conservation vents, which Alyeska maintains are safety devices under the OLD rule.

12.     EPA intends to grant voluntary reconsideration of the three issues raised in Alyeska's petition for reconsideration as a matter of discretion exercised by the EPA Administrator.  EPA will take comment on any proposed revisions to the OLD standards before issuing a new rule.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of November, 2020.

_____
Anne Austin
Principal Deputy Assistant Administrator
Office of Air and Radiation
United States Environmental Protection Agency

**Attachment 3**

*Utah v. EPA,* No. 23-9509, Doc. 010110895101,
Order, (10th Cir. July 27, 2023) (unpublished)

FILED
United States Court of Appeals
Tenth Circuit

July 27, 2023

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

STATE OF UTAH, by and through its
Governor, Spencer J. Cox, and its Attorney
General, Sean D. Reyes,

    Petitioner,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

    Respondents.

_____

PACIFICORP; DESERET GENERATION
& TRANSMISSION CO-OPERATIVE;
UTAH MUNICIPAL POWER AGENCY,

    Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

    Respondents.

_____

UTAH ASSOCIATED MUNICIPAL
POWER SYSTEMS,

    Petitioner,

No. 23-9509
(EPA No. EPA-R08-OAR-2022-315)
(Environmental Protection Agency)

No. 23-9512
(EPA No. EPA-R08-OAR-2022-315)
(Environmental Protection Agency)

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

    Respondents.

No. 23-9520
(EPA No. EPA-R08-OAR-2022-315)
(Environmental Protection Agency)

---

STATE OF OKLAHOMA, by and through
its Attorney General; GENTNER F
DRUMMOND; OKLAHOMA
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

    Petitioners,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; MICHAEL S. REGAN,
Administrator, United States
Environmental Protection Agency,

    Respondents.

No. 23-9514
(EPA No. EPA-RO6-OAR-2021-0801)
(Environmental Protection Agency)

---

OKLAHOMA GAS & ELECTRIC
COMPANY,

    Petitioner,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

No. 23-9521
(EPA No. EPA-HQ-OAR-2021-0663)
(Environmental Protection Agency)

2

Respondents.

_____

TULSA CEMENT LLC, d/b/a Central
Plains Cement Company LLC; REPUBLIC
PAPERBOARD COMPANY LLC,

    Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

    Respondent.

_____

WESTERN FARMERS ELECTRIC
COOPERATIVE,

    Petitioner,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

    Respondents.

No. 23-9533
(EPA No. EPA-HQ-OAR-2021-0663)
(Environmental Protection Agency)

No. 23-9534
(EPA No. EPA-HQ-OAR-2021-0663)
(Environmental Protection Agency)

_____

**ORDER**
_____

Before **TYMKOVICH** and **CARSON**, Circuit Judges.
_____

3

Petitioners have filed motions to stay EPA's final disapproval of Oklahoma's and Utah's respective state implementation plans regarding their Good Neighbor obligations under the 2015 ozone NAAQS. EPA has responded and petitioners have replied.

In deciding whether to grant a stay pending these petitions for review, we consider the traditional factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks omitted).

We conclude petitioners have satisfied their burden as to each of these factors. We therefore stay EPA's final disapproval of Oklahoma's and Utah's respective Good Neighbor state implementation plans for the 2015 ozone NAAQS. This stay will remain in place until the disposition of these petitions for review on their merits, or until further order of this court. Because EPA may not enforce a federal implementation plan without first disapproving a state implementation plan, EPA may not enforce its federal Good Neighbor plan for the 2015 ozone NAAQS against Oklahoma or Utah while the stay remains in place.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

# Attachment 4

*Utah v. EPA,* No. 23-9509, Doc. 010110870022, The State of Utah's Motion to Stay the Final Rule of the U.S. Environmental Protection Agency (10th Cir. June 6, 2023)

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

|  |  |  |
|---|---|---|
| STATE OF UTAH, by and through | ) | |
| its Governor, SPENCER J. COX, | ) | |
| and its Attorney General, | ) | |
| SEAN D. REYES, | ) | |
|  | ) | |
| Petitioner, | ) | |
|  | ) | |
| v. | ) | Case No. 23-9509 |
|  | ) | |
| U.S. ENVIRONMENTAL PROTECTION | ) | |
| AGENCY and MICHAEL S. REGAN, | ) | |
| Administrator, U.S. EPA, | ) | |
|  | ) | |
| Respondents. | ) | |

---

## THE STATE OF UTAH'S MOTION TO STAY THE FINAL RULE OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY

---

Emily C. Schilling
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753
ecschilling@hollandhart.com

Kristina (Tina) R. Van Bockern
Aaron B. Tucker
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107
trvanbockern@hollandhart.com
abtucker@hollandhart.com

Sean D. Reyes
ATTORNEY GENERAL OF UTAH
Melissa A. Holyoak
SOLICITOR GENERAL
*Counsel of Record*
Office of the Attorney General
Utah State Capitol Complex
350 North State Street Suite 230
Salt Lake City, UT 84114-2320
Ph. 801-538-9600
melissaholyoak@agutah.gov

William L. Wehrum
WEHRUM ENVIRONMENTAL LAW
LLC
1629 K Street, NW, Suite 300
Washington, D.C. 20006
Ph. 302-300-0388
William_Wehrum@comcast.net
*Attorneys for Petitioner State of Utah*

of alternative methodologies from the August 2018 Memorandum, and its weight-of-evidence analysis. *Id*. at 31,478–83.

On February 13, 2023, EPA finalized its disapproval of Utah's SIP as part of a single notice in which EPA acted on 21 other SIPs. 88 Fed. Reg. 9,336. In disapproving Utah's SIP, EPA provided a *one paragraph* analysis, reiterating the points raised in the Proposed Rule and announcing the use of new modeling. *See id*. at 9,360.

### C.    Petition for Review

Utah filed its Petition for Review on February 13, 2023. EPA then filed a motion under CAA Section 307(b)(1) to transfer venue to the D.C. Circuit or to dismiss Utah's Petition for improper venue. Doc. 010110827314. Subsequently, on April 27, 2023, this Court entered an Order referring the question of venue to the merits panel. Doc.10994985.[2]

### D.    Petition for Administrative Reconsideration and Stay

On February 24, 2023, Utah submitted to EPA a Petition for Reconsideration and Stay. Att. 7. Because Utah has received no response

---

[2] As discussed in Utah's opposition to EPA's Transfer Motion, venue is proper in this Court. Doc. 010110839320.

from EPA, and given the imminent harm, Utah now moves for a judicial stay. Fed. R. App. P. 18(a)(2)(A).

## ARGUMENT

This Court considers four factors in determining whether to grant a stay: (1) likelihood of success on the merits; (2) irreparable injury if relief is withheld; (3) possibility of harm to other parties if relief is granted; and (4) the public interest. 10th Cir. R. 8.1, 18.1; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## I. Utah is Likely to Prevail on the Merits.

### A. EPA Exceeded its Authority and Acted Arbitrarily in Disapproving Utah's SIP.

EPA "shall approve" a proposed SIP that "meets all of the applicable requirements of [the CAA.]" 42 U.S.C. § 7410(k)(3). Further, EPA's SIP review is limited given the discretion afforded states in preparing a SIP. *See Oklahoma*, 723 F.3d at 1213 n.7 ("EPA has less discretion when it takes actions to reject a SIP than it does when it promulgates a FIP.").

Utah prepared a SIP that met the requirements of the Interstate Transport Provision. Utah applied a weight-of-evidence approach recently accepted by EPA in approving Arizona's interstate transport SIP. *See* Statement of Facts § II.A; Att. 6 at 16–17. Based on this

**Attachment 5**

*Sierra Club v. EPA*, No. 02-1135, Doc. 777003, Order
(D.C. Cir. Oct. 8, 2003) (unpublished)

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 02-1135                                                        September Term, 2003

Filed On: October 8, 2003 [777003]

Sierra Club,

           Petitioner

     v.

Environmental Protection Agency and Christine Todd
Whitman, Administrator, US Environmental Protection
Agency,

           Respondents

_____

American Chemistry Council, et al.,

           Intervenors

_____

Consolidated with 03-1219


      **BEFORE**:   Edwards and Sentelle, Circuit Judges

## O R D E R

      Upon consideration of the motion for stay pending review and expedited review, the
oppositions thereto, the supplement to intervenors' opposition, and the replies, it is

      **ORDERED** that the motion for stay and expedited review be denied.  Petitioner
has not demonstrated that it will be irreparably harmed absent a stay or expedition.  <u>See
Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.</u>, 559 F.2d 841,
843 (D.C. Cir. 1977); <u>D.C. Circuit Handbook of Practice and Internal Procedures</u> 32-33
(2002).


               **Per Curiam**

                        **FOR THE COURT:**
                        Mark J. Langer, Clerk

           BY:

                        Deputy Clerk/LD

# United States Court of Appeals

### For The District of Columbia Circuit

————

**No. 02-1135**                    **September Term, 2003**