NOT SCHEDULED FOR ORAL ARGUMENT

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| UTAH PETROLEUM ASSOCIATION, | ) ) ) | |
| *Petitioner*, | ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) | Case No. 25-9507 |
| *Respondents,* | ) ) | |
| and | ) ) | |
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | ) ) ) ) | |
| *Intervenor-Respondents.* | ) ) ) | |
| STATE OF UTAH, | ) ) ) | |
| *Petitioner*, | ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) | Case No. 25-9508 |
| *Respondents,* | ) ) | |
| and | ) ) ) | |

CENTER FOR BIOLOGICAL
DIVERSITY, et al.,

    *Intervenor-Respondents.*

)
)
)
)

---

### INTERVENOR-RESPONDENTS' MEMORANDUM BRIEF ADDRESSING JURISDICTIONAL QUESTIONS

Intervenor-Respondents Center for Biological Diversity, Utah Physicians for a Healthy Environment, and Living Rivers (together, "the Public Interest Groups") submit this memorandum brief to address the two jurisdictional questions raised in the Court's March 31, 2025 Order.  No. 25-9507, Dkt. No. 37 ("Order").

The administrative reconsideration that Respondents United States Environmental Protection Agency and Administrator Lee Zeldin (together, "EPA") have undertaken of the final agency action under review does not deprive this Court of jurisdiction over these appeals.[1]

While the Public Interest Groups take no position on whether Petitioners Utah Petroleum Association ("UPA") and the State of Utah ("Utah") generally have standing to bring these appeals, EPA's initiation of the reconsideration process

---

[1] These appeals are related to two additional appeals of the same final rule: *Seven County Infrastructure Coalition, et al., v. EPA*, No. 25-9513; and *Ute Indian Tribe of the Uintah and Ouray v. EPA*, No. 25-9525.  The Public Interest Groups are filing identical copies of this memorandum brief in both Case Nos. 25-9507 (UPA) and 25-9508 (Utah).

did not itself deprive them of standing.  Nor does reconsideration itself render the petitions unripe such that this Court should dismiss the appeals on that basis.

Rather, in these appeals the Court should follow the approach it, and other courts like the D.C. Circuit, have taken in prior appeals involving EPA reconsiderations of Clean Air Act actions.  The Court should abate, but not dismiss, the appeals pending reconsideration, and decline to stay the underlying final rule at issue.

I.     **Administrative reconsideration of a final rule on appeal does not render the agency action non-final, undermine the petitioner's standing, or warrant dismissal of the appeal.**

When EPA grants reconsideration of a final rule on appeal, courts typically hold the appeal in abeyance pending the reconsideration, rather than dismissing the appeal for a lack of jurisdiction.  This, for example, is the approach the United States Court of Appeals for the District of Columbia has taken in appeals involving the Clean Air Act, and other environmental statutes, when EPA has undertaken reconsideration of the final rule on appeal.  *See, e.g.*, *State of California, et al.*, *v. EPA*, No. 21-1014, Doc. Nos. 1885786, 1916444, 1990306, 2025313, 2036077 (D.C. Cir.) (abating the appeals, and renewing that abatement several times, pending EPA's reconsideration of a Clean Air Act action); *State of New York, et al., v. EPA*, No. 21-1028, Doc. No. 1927582 (D.C. Cir. Dec. 21, 2021) (same); *Sierra*

*Club v. EPA*, 551 F.3d 1019, 1023 (D.C. Cir. 2008) (abating appeal pending

reconsideration and also denying a motion to stay the underlying rule); *see also*

*Am. Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir. 2012).

It is important to note that these courts did <u>not</u> stay the final agency actions

at issue before, or after, placing any of these cases in abeyance. *See, e.g.*, *Sierra*

*Club*, 551 F.3d 1019 (abating appeal pending reconsideration and denying a motion

to stay the underlying rule, at No. 02-1135, Doc. No. 777003). These cases also

demonstrate how long EPA's deadline-free reconsideration process can take,

counseling against a long-term stay of the final rule in the present appeals that

exposes the public and environment to excess levels of harmful ozone. *See* Public

Interest Groups, Mot. for Leave to Respond to Stay, No. 25-9507, Dkt. No. 28, at

18–19 (Mar. 4, 2025) (listing examples of multi-year Clean Air Act reconsideration

processes).

This Court should follow this same well-established approach in the present

appeals—placing the appeals in abeyance pending reconsideration but not staying

the underlying rule.

This Court has already taken this approach in another pending appeal in

which the Center for Biological Diversity intervened on behalf of the respondent,

EPA. In *State of Colorado v. EPA, et al*., No. 23-9566, EPA granted petitioner

State of Colorado's request for reconsideration of portions of the Clean Air Act-

4

related final rule on appeal.  *See* EPA, Unopposed Mot. for Abeyance, No. 23-9566, Dkt. No. 24, at 3 (Oct. 18, 2023).  This Court implicitly recognized that it had jurisdiction and, on EPA's motion, abated the case pending this reconsideration.  *See* No. 23-9566, Dkt. No. 26.  The Court did not stay the underlying rule.  This case remains in abeyance, with EPA submitting status reports every sixty days.  This is the course of action the Court should follow in the present appeals, including not staying the underlying rule.

One of the most significant considerations supporting abating an appeal pending reconsideration, rather than dismissing it, is that dismissal could result in a situation where a petitioner is wholly deprived of judicial review of significant parts of the original EPA action on appeal.  That is because the scope of EPA's administrative reconsideration can be narrower than the scope of the original rule on appeal.  That is, EPA does not have to reconsider every part of the original final rule when it undertakes the reconsideration process.

As a practical matter, dismissal would subvert the justiciability of actions taken by EPA that are not part of the reconsideration.  The Clean Air Act sets forth a short, sixty-day timeframe for petitions for review of final EPA actions.  42 U.S.C. § 7607(b)(1).  Judicial review of the broader initial rule, should EPA only reconsider a part of it, would be improperly eliminated if appeals of the initial rule are dismissed based on reconsideration and the sixty-day petition period expires.

And the sixty-day petition period will almost inevitably expire before EPA resolves its reconsideration process, which typically requires new notice-and-comment rulemaking. *Cf. ICC v. Bhd. Of Locomotive Eng'rs*, 482 U.S. 270, 279, 284 (1987) (presenting a different context where "the timely petition for administrative reconsideration stayed the running" of the period to petition for review).

This leaves a would-be petitioner with only the option of petitioning for review of EPA's narrower decision on reconsideration. That is not justice delayed, it is justice denied. It is contrary to the plain language and purpose of the Clean Air Act's judicial review provision, 42 U.S.C. § 7607(b)(1) ("reconsideration by the Administrator . . . shall not affect the finality of such rule or action for purposes of judicial review").

For instance, in the *State of Colorado* appeal referenced above—in which this Court abated the case but did not stay the underlying agency action—EPA's initial rule covered several elements of Colorado's State Implementation Plan ("SIP") for addressing harmful ozone pollution. 88 Fed. Reg. 29,827 (May 9, 2023). EPA's ongoing reconsideration, however, only concerns one specific part of that SIP: "the adequacy of the reporting requirements in the specific SIP provisions at issue." EPA, Unopposed Mot. for Abeyance, No. 23-9566, Dkt. No. 24, at 3; *see also* 89 Fed. Reg. 63,852 (Aug. 6, 2024) (proposed rule on reconsideration, which only concerns reporting requirements). To dismiss the appeals of the broader

underlying rule on the basis of EPA's narrow reconsideration process would deprive petitioners of any opportunity to challenge issues in the broader rule.

## II.    The requirements of Section 307(b)(1), but <u>not</u> Section 307(d), apply in these appeals.

One important clarification affects both jurisdictional questions, but the ripeness question in particular.  EPA did not grant UPA's and Utah's petitions for reconsideration under Section 307(d)(7)(B) of the Clean Air Act, 42 U.S.C. § 7607(d)(7)(B), and the statutory provisions of that section do not apply.

The Clean Air Act only provides for petitions for reconsideration, and only sets forth requirements governing such petitions, for a specific set of EPA actions that do not include the agency actions underlying these appeals: extension determinations or reclassifications of areas that fail to attain.  *See* 42 U.S.C. § 7607(d)(1) ("This subsection applies to — [enumerated agency actions that do not include the actions under review here]"); *see also* 42 U.S.C. § 7607(d)(7)(B) (the provision, within subsection (d), providing for Clean Air Act petitions for reconsideration).

In granting UPA's and Utah's petitions for reconsideration under the Administrative Procedure Act, 5 U.S.C. § 553(e), rather than Section 307(d)(7)(B) of the Clean Air Act, EPA correctly stated that "the Extension Denial and Determination is not among the types of actions listed in CAA section 307(d)(1),

[and] the reconsideration and stay procedures in CAA section 307(d)(7)(B) are not available here." *E.g.*, EPA, Conditionally Unopposed Motion to Hold Case in Abeyance, No. 25-9507, Dkt. No. 23, Ex. 1 at 1–2 (citing to 5 U.S.C. § 553(e) as the basis for reconsidering the Final Rule).

Thus, the language in Section 307(d)(7)(B) and the relevant case law, does not apply to render the EPA action at issue non-final or unripe. Rather, the language of Section 307(b)(1), 42 U.S.C. § 7607(b)(1)—which is not limited like Section 307(d)—applies: "The filing of a petition for reconsideration by the Administrator of any otherwise final rule or action shall not affect the finality of such rule or action for purposes of judicial review."[2]

Accordingly, the reasoning set forth in *Utility Air Regulatory Grp. v. EPA,* 744 F.3d 741, 747 (D.C. Cir. 2014), and *Oklahoma v. EPA,* 723 F.3d 1201, 1214–15 (10th Cir. 2013), relating to Section 307(d)(7)(B), does not apply here. Rather, the portion of *Utility Air Regulatory Group v. EPA* that discusses Section 307(b)(1) informs this Court's analysis, not that case's discussion of Section 307(d). There, the D.C. Circuit stated:

---

[2] This is not to say that UPA and Utah appropriately exhausted their arguments before EPA, as required by general exhaustion principles. *See Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1127 (10th Cir. 2009). Arguments not made in comments to the agency are forfeited on appeal. *Id.*; *N.M. Envtl. Improvement Div. v. Thomas*, 789 F.2d 825, 836–37 (10th Cir. 1986).

> This court's general view is that "a pending petition for [agency] rehearing . . . render[s] the underlying agency action nonfinal (and hence unreviewable) with respect to the filing party." *United Transp. Union v. ICC*, 871 F.2d 1114, 1116, 276 U.S. App. D.C. 374 (D.C. Cir. 1989); *see, e.g., Clifton Power Corp. v. FERC*, 294 F.3d 108, 110-12, 352 U.S. App. D.C. 310 (D.C. Cir. 2002). In the 1990 Amendments to the Clean Air Act, however, Congress made clear that this does not apply to challenges to rules promulgated under the Act. A provision of 42 U.S.C. § 7607(b)(1) states: "The filing of a petition for reconsideration by the Administrator of any otherwise final rule or action shall not affect the finality of such rule or action for purposes of judicial review . . . ." 42 U.S.C. § 7607(b)(1). The Senate Report accompanying the Clean Air Act Amendments confirms that the purpose of that provision was to "overrule," in the context of the Clean Air Act, the holding in *West Penn Power Co. v. EPA*, 860 F.2d 581, 583 (3d Cir. 1988), that a pending petition for reconsideration deprives an agency action of finality. S. REP. NO. 101-228, at 3755 (1989). *West Penn* was one of the cases upon which this court relied in adopting our general view. *See United Transp. Union*, 871 F.2d at 1117-18.

744 F.3d 741, 746 (D.C. Cir. 2014). The remainder of the discussion pertaining to

Section 307(d), which is what led the D.C. Circuit to conclude it could not review

the issue under reconsideration, does not apply. *Id*. at 746–47.

Finally, there is no "discretionary review period specifically provided by the

agency" here, which is what led the Court to the conclusion that the action at issue

in *City of Colorado Spring v. Solis* constituted a final agency action subject to

judicial review.[3]  589 F.3d 1121, 1130–31 (10th Cir. 2009) (quoting *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 279 (1987)).  This is also why any stay of the final rule here would last an indefinite, and likely lengthy, period of time—there are no guardrails on EPA's reconsideration process.

## CONCLUSION

For the foregoing reasons, EPA undertaking the reconsideration process does not in and of itself deprive this Court of jurisdiction over these appeals.  The Public Interest Groups respectfully request that the Court follow its own and the D.C. Circuit's example and hold the appeals in abeyance pending reconsideration but not stay the underlying final rule.

Respectfully submitted,

/s/ *Ryan Maher*

Ryan Maher
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, D.C. 20005
(781) 325-6303
rmaher@biologicaldiversity.org

---

[3] The Public Interest Groups take no position here on whether the reconsideration process provided for in Section 307(d)(7)(B) would qualify as such a discretionary review period.  Nor does the Court need to make that determination because these appeals do not involve a Section 307(d) agency action.

Wendy Park
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
(510) 844-7138
wpark@biologicaldiversity.org

*Counsel for Intervenor-Respondents*
*Center for Biological Diversity, Utah*
*Physicians for a Healthy Environment,*
*and Living Rivers*

DATED: April 14, 2025

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rules of Appellate Procedure 32(g)(1) and 27(d)(2)(C), I hereby certify that the foregoing contains 2,215 words, as counted by counsel's word processing system.

Further, this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using 14-point Times New Roman font.

/s/ *Ryan Maher*
Ryan Maher

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, I electronically filed the foregoing memorandum brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Ryan Maher*
Ryan Maher