

6905 S. 1300 E. #288, Cottonwood Heights, UT 84047-1817

FUELING UTAH'S GROWTH & PROSPERITY

May 10, 2024

Ms. Amanda Brimmer
Air and Radiation Division
EPA, Region 8
Mailcode 8ARD–IO
1595 Wynkoop Street
Denver, CO 80202–1129

**Email:** brimmer.amanda@epa.gov

*Submitted electronically to docket:  EPA-R08-OAR-2024-0001*

**Subject:  Comments by the Utah Petroleum Association on EPA's Proposal to Approve Second Extension to Attainment Date and Determination of Attainment by Attainment Date for the Uinta Basin Ozone Nonattainment Area Under the 2015 Ozone Standard**

Dear Ms. Brimmer:

On April 10, 2024, the Environmental Protection Agency ("EPA") published its proposed approval of the second one year extension to the attainment date and its determination of attainment by attainment date ("DAAD") for the Uinta Basin ozone nonattainment area ("UB") under the 2015 National Ambient Air Quality Standard ("NAAQS") for ozone.[1]  The Utah Petroleum Association ("UPA") is pleased to have the opportunity to provide these comments on the proposal.

UPA is a statewide oil and gas trade association established in 1958, representing companies involved in all aspects of Utah's oil and gas industry, with many operating in the UB. UPA members range from independent producers to midstream and service providers, and to major oil and natural gas companies widely recognized as industry leaders responsible for driving technology advancement resulting in environmental and efficiency gains.

UPA supports EPA finalizing its approval of the second extension to the attainment date for the UB.  UPA also supports EPA the finalizing the DAAD.  The UB meets all statutory criteria for EPA to approve the extension and EPA identified no reasons to exercise its discretionary authority to deny the extension.  Additionally, with the extension to the attainment date, air quality in the UB met the 2015 ozone NAAQS.  Therefore, the UB met the requirements for EPA to finalize the DAAD, and, contrary to approving the second extension, EPA does not have discretion to withhold the DAAD.  Upon completing this action, we request that EPA work closely with Utah and the Ute Indian Tribe to develop and approve a maintenance plan for the UB.

---

[1] *Extension of the Attainment Date and Determination of Attainment by the Attainment Date of the Uinta Basin Marginal Nonattainment Area Under the 2015 Ozone National Ambient Air Quality Standards*, 89 FR 25223 ("Proposal").

### 1. History and Regulatory Requirements

The Clean Air Act ("CAA") states, "Upon application by any State, the Administrator may extend for 1 additional year'' the attainment date, provided that the state has complied with all requirements and commitments pertaining to the area in its applicable implementation plan and the area meets certain air quality criteria. "No more than 2 one-year extensions may be issued under this paragraph for a single nonattainment area."[2] The Utah Division of Air Quality ("UDAQ") and the Ute Indian Tribe ("Tribe") both requested the first extension to the attainment date upon the UB meeting the air quality criteria.[3] To be granted the first extension, the area's 4th highest daily maximum 8-hour average in the attainment year must be no greater than the level of that NAAQS.[4] EPA published a final approval of the first extension on October 7, 2022.[5]

UDAQ and the Ute Indian Tribe both requested the second extension to the attainment date after the UB met the air quality criteria.[6] To be granted the second extension, the area's 4th highest daily maximum 8-hour value, averaged over both the original attainment year and the first extension year, must be no greater than the level of that NAAQS.[7]

### 2. EPA should approve the extension because the UB meets all statutory and discretionary criteria.

For the UB, the 4th highest daily maximum 8-hour value, averaged over the original attainment year and the first extension year, are no greater than the level of that NAAQS. As shown in **Table 1** below, the average over the two year period is 69 parts per billion ("ppb"), less than the level of the NAAQS, 70 ppb:

| Year | | 4th highest daily maximum 8-hour value, ppb |
|---|---|---|
| Original attainment year | 2020 | 66 |
| First extension year | 2021 | 72 |
| | | |
| **2-Year Average** | | 69 |
| **Level of 2015 Ozone NAAQS** | | 70 |

*Table 1. UB Qualification for Second One-Year Extension*

---

[2] CAA §181(a)(5)(B).
[3] Letter; Bryce C. Bird, Director, Utah Division of Air Quality, to Debra Thomas, Acting Regional Administrator, EPA Region 8; March 29, 2021. Also, letter; Shawn Chapose, Business Committee Chairman, to Debra Thomas, Acting Regional Administrator, EPA Region 8; May 25, 2021.
[4] 40 CFR 51.1307(a)(1).
[5] *Determinations of Attainment by the Attainment Date, Extensions of the Attainment Date, and Reclassification of Areas Classified as Marginal for the 2015 Ozone National Ambient Air Quality Standards*, 87 FR 60897.
[6] Letter; Bryce C. Bird, Director, Utah Division of Air Quality, to Kathleen Becker, Regional Administrator, EPA Region 8; March 30, 2022. Also, letter; Shawn Chapose, Business Committee Chairman, to KC Becker, Regional Administrator, EPA Region 8; December 20, 2022.
[7] 40 CFR 51.1307(a)(2).

Although EPA has discretion to deny approval of this extension, EPA asserted, "we have found no compelling countervailing facts or circumstances that would cause the agency to exercise its discretion to deny the request notwithstanding the state's demonstration."[8] We agree with EPA's assertion of "no compelling countervailing facts or circumstances" because air quality in the UB meets the requirement for the extension and has steadily improved.

As part of its analysis, EPA conducted an Environmental Justice review for the counties in the UB, using the EJ Screen tool. EPA stated, "The results of our screening analysis did not indicate disproportionate exposure or burdens with respect to the non-ozone environmental indicators assessed in EJSCREEN for the 2-county (Duchesne and Uintah) area, or relative to the U.S. as a whole."[9] The attainment date extension should be granted because no adverse environmental justice concerns have been identified, and granting the extension will enhance environmental justice by allowing communities to produce safe, affordable, and sustainable energy. However, the criteria EPA used in its proposal are not appropriate for evaluating requests to extend ozone attainment dates.

We don't agree with EPA's proposal to use non-ozone environmental indicators to evaluate actions related only to ozone. EJSCREEN uses thirteen environmental indicators including the prevalence of lead paint, proximity to traffic, underground storage tanks, and wastewater discharges. Non-ozone indicators should not be a factor to approve or deny the extension request because the potential ozone mitigation measures that might be adopted after denying the request have little if any relevance to these other environmental indicators. EJSCREEN has an indicator that is specific to ozone, and EPA should focus on this indicator when evaluating the environmental justice aspects of a request to extend the ozone attainment date.

Environmental justice evaluations should be tailored to the pollutant at issue. Ozone is a regional pollutant. Neither the adverse impacts of ozone nor the benefits of emissions reductions are localized. Because ozone and its precursors travel across state lines and around the globe, ozone mitigation measures and potential State Implementation Plan (SIP) requirements generally have little impact on environmental justice at the census block group level utilized in EJSCREEN. The ozone benefits resulting from emission reduction measures generally occur in different census block groups than those where the emission reductions occur. EJSCREEN therefore has less relevance for evaluating secondary pollutants like ozone than for primary pollutants such as carbon monoxide. We recommend that EPA continue to develop policies for how it applies environmental justice factors to different types of environmental decisions.

We expect air quality in the UB to continue to improve based on new emission reductions already implemented but not prior to the proposed attainment year of 2022 and additional reductions on the horizon resulting from new final regulatory requirements.

**Figure 1. UB Air Quality, 2013 through Winter 2024** below, shows a steady improvement in air quality from 2013 through 2024.[10] Although the 2024 data is based on a partial year and therefore is not a valid design value based on three full calendar years of data, for this non-attainment area with wintertime ozone, it illustrates what will almost certainly be better air quality in 2024 compared to 2023. Typically, the UB incurs no or only one or two ozone exceedances

---

[8] Proposal, p. 25226, middle column.
[9] Proposal, p. 25228, first column.
[10] EPA has not yet published certified data or official design values for 2023 or published certified data for 2024 as of this writing. Data for 2023 and 2024 came from daily data for each monitor on EPA's Air Data website as of May 1, 2024. See https://www.epa.gov/outdoor-air-quality-data/download-daily-data.

during the summertime, often caused by wildfires in Utah or other states. Thus, little likelihood exists for substantially worse air quality in the UB as the year 2024 progresses.



*Figure 1. UB Air Quality, 2013 through Winter 2024*

Moreover, the UB experienced a 25% reduction in ozone design value over the period 2013 to 2023 despite also experiencing a 90% increase in oil production over the same period. This air quality improvement illustrates the positive effect of required and voluntary emission reduction practices in the UB as described below.

The major factor in 2023 high winter ozone was the extraordinarily high amount of snow cover in the UB relative to other years. The UB experiences unusual elevated wintertime ozone. All but one 2023 exceedance of the 2015 ozone NAAQS in the UB occurred in winter, plus one exceedance day in late April. Winter exceedances occur only during periods of snow cover and inversions. Without snow cover to reflect the sunlight and increase its capacity to contribute to ozone formation, little ozone forms. **Figure 2. 2023 and 2024 Snow Water Equivalents in Duchesne Compared to Period of Record**, illustrates that the 2023 snow water equivalent[11] in Duchesne, for example, exceeded the 70th percentile for the entire season and at times exceeded the 90th percentile for the period of record, 1979 to 2023:[12]

---

[11] The National Weather Service defines "snow water equivalent" as "the depth of water that would cover the ground if the snow cover was in a liquid state."
[12] Graph obtained from UDSA Natural Resources Conservation Division at https://nwcc-apps.sc.egov.usda.gov/awdb/basin-plots/POR/WTEQ/assocHUCut_8/duchesne.html.



*Figure 2. 2023 and 2024 Snow Water Equivalents in Duchesne Compared to Period of Record*

We therefore conclude that the UB had an unusually high amount of snow in 2023, resulting in unusually high ozone formation during that winter.

Additionally, even though the 2024 snow water equivalent exceeded the historic median in late February when UB winter ozone often forms, the highest 8-hour ozone reading in the UB for the winter of 2024 was only 63 ppb at the Dinosaur monitor. No other monitor had a winter 2024 reading exceeding 60 ppb. The highest (policy relevant) 4th high 8-hour ozone reading in the UB for the winter of 2024 was 60 ppb at the Dinosaur monitor, far below the level of the standard. This indicates that emission reduction measures in the UB have a positive effect on air quality.

Although the UB experienced high ozone in the 2023 winter ozone season, a year not determinative for the second extension approval or the DAAD,[13] several other factors indicate the area has a solid path established to maintain attainment over the long term:

---

[13] See Proposal, p. 25226: "As part of this rulemaking, EPA acknowledges that preliminary ozone monitoring data indicate that in early 2023, the region experienced excessively high ozone values. While **this data was not determinative in proposing to grant the 2nd extended attainment date**, it does show that there continue to be periods of high ozone levels in the Basin. Addressing the continuing ozone problem will require continued efforts and steady commitments from state, local, federal, tribal, and industry partners to reduce precursor emissions in the region. The following sections (see i through iv below) provide additional information on reductions EPA expects will significantly mitigate exceedances in the area." [emphasis added]

- The peer-reviewed journal article "Winter Ozone Pollution in Utah's Uinta Basin is Attenuating" identifies a statistically significant decline in ozone concentrations attributed in part to more stringent pollution regulations and controls.[14]

- EPA recently finalized a Federal Implementation Plan ("FIP") for operations in the UB, for which most operators have now installed extensive required controls on existing operations in the Tribal portion of the UB.  These controls were not in place for the winter ozone season of 2023 because the final rule was published in the Federal Register at the very end of 2022, just weeks prior to the start of the 2023 winter ozone season and not enough time for operators to install the capital investments needed for the FIP requirements prior to that ozone season.[15]

- EPA recently finalized its OOOOb/c regulations for controls on modified and existing sources.[16]  Oil and gas sources that commenced construction, modification, or reconstruction after December 6, 2022, need to comply with the new set of stringent requirements set out in New Source Performance Standards ("NSPS") OOOOb.[17] Ultimately, after Utah adopts its regulations to address the Emissions Guidelines of OOOOc, existing sources on State lands will need to comply with these requirements as well.  Either EPA or the Tribe will establish regulations for OOOOc implementation on the Tribal lands in Utah.

- The Bureau of Land Management recently finalized their Waste Prevention rule.  Although BLM stated that they did not design this rule for air quality reasons, it will nonetheless result in reductions of emissions of volatile organic compounds.[18]

- Operators within the UB have used and continue to use several voluntary measures for reducing emissions within the nonattainment area including but not limited to employing new technology such as aerial surveys to detect emissions, increasing frequency of Leak Detection and Repair ("LDAR") surveys, reducing repair times for leaks detected as part of LDAR, replacing pneumatic powered pumps with solar powered pumps, and routing vapors to control devices even where not required.  EPA acknowledged a letter from the Ute Indian Tribe outlining some of the voluntary measures employed by UB operators.[19]

Thus, the 2023 anomaly in air quality data should not compel EPA to disapprove the extension.

EPA has taken ample time to thoroughly consider this second extension and, in this case, has taken significant additional time for careful deliberation.  Typically, EPA has proposed and finalized approvals to extension requests in a year or less from the attainment date.[20]  We urge

---

[14] *Winter Ozone Pollution in Utah's Uinta Basin is Attenuating*, Marc L. Mansfield and Seth N. Lyman, Atmosphere 2021, 12, 4, https://dx.doi.org/10.3390/atmos12010004.
[15] *Federal Implementation Plan for Managing Emissions from Oil and Natural Gas Sources on Indian Country Lands Within the Uintah and Ouray Indian Reservation in Utah*, 87 FR 75334.
[16] *Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review*, 89 FR 16820, "OOOOb/c Final Rule."
[17] OOOOb/c Final Rule, p. 16826.
[18] *Waste Prevention, Production Subject to Royalties, and Resource Conservation*, 89 FR 25378.
[19] Proposal p. 25227 and Letter; May 30, 2023; Ute Indian Tribe Business Committee Chairman, Julius T. Murray, III to U.S. EPA Region 8 Enforcement and Compliance Director, Suzanne Bohan.
[20] For the 2008 ozone standard, EPA proposed approval of initial extensions for eight Marginal nonattainment areas just one month after the attainment date (80 FR 51992) and finalized the

EPA to finalize this approval as soon as possible. Otherwise, operators in the UB and state regulators remain in a state of uncertainty. Considering that the attainment date schedule never changes as measured by years from initial designation,[21] should EPA delay its final decision and reverse the extension approval, air quality planners will lose valuable planning time to develop required SIP elements such as an attainment demonstration, even though operators will continue to implement all the emission reduction measures cited above and air quality will inevitably continue its improvement trend.

### 3. With the extension approval, the EPA should finalize the determination of attainment by attainment date because the UB meets the criteria.

The only criteria for EPA to grant the DAAD is that the area met the NAAQS for the three-year calendar period prior to the attainment date. EPA's final approval of the second one-year extension will move the attainment date to August 3, 2023, with attainment based on the three full calendar years from 2020 through 2022. The air quality data shown below in **Table 2** illustrates that that the area met the 2015 ozone NAAQS, with a design value of 67 ppb, well below the 70 ppb ozone NAAQS:

| 4th High: | Ozone, ppb |
|---|---|
| 2020 | 65 |
| 2021 | 72 |
| 2022 | 66 |
|  |  |
| 3-Year Average | 67 |
| Level of 2015 Ozone NAAQS | 70 |

*Table 2. Determination of Design Value for Attainment*

EPA indicated in the proposal that the UB met the NAAQS.[22]

Upon approving the second one-year extension, EPA does not have discretion to deny the DAAD. The CAA indicates that EPA "shall determine, based on the area's air quality as of the attainment date, whether the area attained the standard by" the attainment date.[23] The CAA provides no other criteria for determining whether the area attained other than air quality as of the attainment date, and provides no discretion.

---

extension approvals just under 8.5 months later (81 FR 26697). Again, under the 2008 standard, EPA proposed approval of extensions for two Moderate nonattainment areas four months after the attainment date (83 FR 56784) and finalized approvals for two areas eight months later (84 FR 44238). (In between the proposed and the final rulemaking, the governor of Colorado withdrew the request for the extension for the Denver area, and EPA split the Sheboygan, Wisconsin area into two nonattainment areas based on the state's request.)

[21] See Table 1 in 40 CFR 51.1303.
[22] See Proposal, Table 1, p. 25224.
[23] CAA §179(c)(1).


*4. **Finalizing the DAAD does not re-designate the area to attainment.***

Finalizing the DAAD does not re-designate the area to attainment. To be re-designated to attainment, the UB must meet several additional requirements, including (but not limited to), the following:[24]

- EPA must determine that the improvement in air quality is due to permanent and enforceable emission reductions.

- EPA must fully approve a maintenance plan including contingency measures to be triggered if the area falls back out of attainment.

- The initial maintenance plan must demonstrate that the area will continue to attain the standard for 10 years after EPA re-designates the area to attainment.[25]

Although this action does not constitute a redesignation, we encourage EPA to work closely with UDAQ and the Tribe to develop and approve a maintenance plan for the UB. This will serve to eliminate any future uncertainty for operators and the agencies.

*5. **Conclusion***

As indicated in above-cited letters provided by both the state of Utah and the Ute Indian Tribe, both entities with jurisdictions within the UB support this proposal. And, as shown above, the UB meets all requirements for EPA to approve the second one-year extension and to finalize the DAAD. Significant new emission controls will continue to be implemented within the UB and should continue to drive emissions down and continue to drive improvements in air quality. Finally, finalizing these proposals does not constitute redesignation to attainment, which requires several additional measures.

Sincerely,

*[signature]*

Rikki Hrenko-Browning
President, Utah Petroleum Association

cc:    Bryce Bird – bbird@utah.gov
        Becky Close - bclose@utah.gov
        Lonnie Favel - lonnief@utetribe.com
        Sheila Vance – svance@utah.gov

---

[24] See Calcagni Memo, *Procedures for Processing Requests for Redesignating Areas to Attainment*, Joseph Calcagni to EPA Directors, September 4, 1992.
[25] Additionally, the maintenance plan must be updated near the end of the first 10-year period to demonstrate attainment for a second 10-year period.