# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

|  |  |  |
|---|---|---|
| UTAH PETROLEUM ASSOCIATION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 25-9507 |
| | ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, U.S. EPA, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | ) | |
| | ) | |
| Intervenor-Respondents. | ) | |

## UTAH PETROLEUM ASSOCIATION'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE FINAL RULE

Emily C. Schilling
Sydney J. Sell
Andrew P. Revelle
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753
ecschilling@hollandhart.com
sjsell@hollandhart.com
aprevelle@hollandhart.com

Kristina (Tina) R. Van Bockern
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107
trvanbockern@hollandhart.com

*Attorneys for Petitioner Utah Petroleum Association*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.........................................................................ii

GLOSSARY OF TERMS ...........................................................................iv

LIST OF ATTACHMENTS ......................................................................... v

INTRODUCTION..................................................................................... 1

ARGUMENT ........................................................................................... 1

I.    Intervenors Mischaracterize Ozone Data from the Uinta
      Basin................................................................................................ 1

II.   UPA Satisfies All the Stay Requirements. ..................................... 6

      A.    UPA is Likely to Prevail on the Merits. ............................. 6

      B.    UPA's Members Will Suffer Irreparable Harm Absent a
            Stay.................................................................................... 11

      C.    A Stay Will Not Harm Intervenors..................................... 12

      D.    The Public Interest Favors a Stay. ..................................... 13

CONCLUSION ...................................................................................... 15

CERTIFICATE OF COMPLIANCE......................................................... 16

CERTIFICATE OF SERVICE.................................................................. 16

ATTACHMENTS.................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Darren Patterson Christian Acad. v. Roy*,
 699 F. Supp. 3d 1163 (D. Colo. 2023) .................................................. 10

*Delaware Dep't of Nat. Resources v. EPA*,
 895 F.3d 90 (D.C. Cir. 2018) ........................................................... 6, 7

*Loper Bright Enters. v. Raimondo*,
 603 U.S. 369 (2024) ..................................................................... 6, 7

*Ohio v. EPA*,
 603 U.S. 279 (2024) ....................................................................... 13

*Tri-State Generation & Transmission Ass'n v. Shoshone River
 Power, Inc.*,
 805 F.2d 351 (10th Cir. 1986) .......................................................... 14

*UPA v. EPA*,
 No. 25-9520, Dkt. #24, Order (10th Cir. Apr. 30, 2025)
 (unpublished) ........................................................................... 13

*Verlo v. Martinez*,
 820 F.3d 1113 (10th Cir. 2016) ......................................................... 11

*Wyoming v. United States DOI*,
 366 F. Supp. 3d 1284 (D. Wyo. 2018) .................................................. 14

### STATUTES

42 U.S.C. § 7407 ............................................................................ 3

42 U.S.C. § 7410 ............................................................................ 3

42 U.S.C. § 7511 ............................................................................ 3

42 U.S.C. § 7511(a)(5)(A) .................................................................. 7

42 U.S.C. § 7511(a)(5)(B) .................................................................. 8

42 U.S.C. § 7511(b)(2) .................................................................... 12

42 U.S.C. § 7511a ........................................................................... 3

### RULES

Fed. R. App. P. 25(c) ..................................................................... 16

Fed. R. App. P. 27(d)(1)-(2) ......................................................... 16

Fed. R. App. P. 27(d)(1)(E) .......................................................... 16

Fed. R. App. P. 32(f) ..................................................................... 16

### FEDERAL REGISTER

89 Fed. Reg. 25,223 (April 10, 2024) ................................... 3, 5, 9

89 Fed. Reg. 101,483 (Dec. 16, 2024) .................................... 2, 12

# GLOSSARY OF TERMS

| | |
|---|---|
| CAA | Clean Air Act |
| EPA | U.S. Environmental Protection Agency |
| Final Rule | *Denial of Request for Attainment Date Extension, Finding of Failure To Attain, and Reclassification of an Area in Utah as Moderate for the 2015 Ozone National Ambient Air Quality Standards*, 89 Fed. Reg. 101,483 (Dec. 16, 2024) |
| NAAQS | National Ambient Air Quality Standards |
| ppb | parts per billion |
| Proposed Rule | *Extension of the Attainment Date and Determination of Attainment by the Attainment Date of the Uinta Basin Marginal Nonattainment Area Under the 2015 Ozone National Ambient Air Quality Standards*, 89 Fed. Reg. 25,223 (Apr. 10, 2024) |
| RACT | Reasonably Available Control Technology |
| RFP | Reasonable Further Progress |
| SIP | State Implementation Plan |
| UPA | Utah Petroleum Association |

# LIST OF ATTACHMENTS

| No. | Title |
| --- | --- |
| 1 | Declaration of Marise Textor, Utah Petroleum Association |
| 2 | Center for Biological Diversity, Clean Air Act Notice of Intent to Sue (Feb. 4, 2025) |
| 3 | *UPA v. EPA*, No. 25-9520, Dkt. #24, Order (10th Cir. Apr. 30, 2025) |

## INTRODUCTION

The Court should grant UPA's motion, Dkt. #10, because UPA has satisfied the four requirements for a judicial stay. In their opposition, Intervenors mischaracterize the data pertaining to ozone concentrations in the Uinta Basin, ignore the imminent and irreparable harms UPA's member face, and contend that EPA is free to exercise its discretion beyond the limits imposed by the CAA. Intervenors' arguments are not convincing. The Court should stay the Final Rule.

## ARGUMENT

### I.    Intervenors Mischaracterize Ozone Data from the Uinta Basin.

Picking up where they left off in their Motion for Leave to Respond, Dkt. #28, Intervenors continue to mischaracterize the record to exaggerate the public harms of the stay. Intervenors claim that the Uinta Basin has a "chronic history of failing to attain" the ozone NAAQS and that Utah and UPA "cherry-pick air monitoring data" and "[r]ely on this nonrepresentative data" to "paint a different picture." Opp. 2, 8. Intervenors then argue that granting a second extension to the attainment date would allow Utah and UPA to "take advantage of this outlier dataset" to claim that the Uinta Basin attained the standard by

the extended deadline. *Id.* at 7. This hyperbolic description is not only misleading but conflicts with the purpose of the NAAQS.

Contrary to Intervenors' mischaracterization, the record demonstrates that ozone concentrations in the Uinta Basin have been steadily improving for over a decade and will continue to improve regardless of whether the Court stays the Final Rule. EPA provided the following chart in its Response to Comments, which depicts the steady improvement toward the 70 ppb ozone standard since 2012:



Dkt. #10 at 107.

As EPA acknowledged in the Final Rule, this data shows "an overall trend towards attainment." 89 Fed. Reg. 101,483, 101,485 (Dec. 16, 2024). EPA further explained that it is "encouraged by the progress of emissions reductions in the area," *id.*, and "is optimistic that the area will attain

the NAAQS and remain in attainment through the emission reduction efforts to date," Dkt. #10 at 113. Indeed, the record demonstrates that the Uinta Basin attained the ozone standard by the proposed extended attainment date of August 3, 2023, based on the area's "design value" over the three-year averaging period from 2020-2022. 89 Fed. Reg. 25,223, 25,224 (April 10, 2024).

This type of progress is exactly what the CAA contemplates. For areas that do not meet the ozone NAAQS, the CAA imposes increasingly strict State planning requirements—subject to statutory extensions—with the goal of improving air quality until such areas demonstrate compliance. 42 U.S.C. §§ 7407, 7410, 7511, 7511a. Thus, a nonattainment area is, by definition, always out of compliance with the NAAQS until the year that it attains the standard. Because Intervenors ignore this basic CAA principle, their use of the years prior to the area meeting the standard to claim that the Uinta Basin is chronically in nonattainment is misleading.

Intervenors' reliance on the data from subsequent years is also misleading. While the Uinta Basin did not meet the ozone NAAQS for the three years after 2022, this is due to the very rare and extremely high

snow year in 2023, which dramatically increased the formation of ozone. Dkt. #10 at 108–09. The resulting spike in ozone concentrations skewed the design values for the three-year averaging periods that include the high snow year (2021-2023, 2022-2024, and 2023-2025).

The chart below shows that in 2024 and 2025 year-to-date, the Uinta Basin returned to its consistent trend of improving ozone concentrations, and low number of annual exceedances. The Uinta Basin experienced individual exceedances of the ozone standard during only three days in 2024 and one day in 2025,[1] and not all monitors showed exceedances.

---

[1] These exceedances do not contribute to nonattainment of the standard, which uses the fourth highest ozone concentration. Marise Textor Decl., ¶17. Additionally, this data does not include "exceptional events data," which EPA is required to exclude from relevant determinations. *Id.* ¶14, n. 1.



**UB Air Quality, 2013 through Winter 2024**

Textor Decl., ¶14, Att. 1.

As Intervenors acknowledge, Opp. 13, individual exceedances can have very little impact on whether an area is meeting the NAAQS because attainment is based on three-year averages. *See* 89 Fed. Reg. at 25,224. If not for the spike in ozone concentrations in 2023, the design values for 2024 and 2025 would likely demonstrate continued improvement toward long term attainment of the ozone NAAQS. Textor Decl., ¶19. Accordingly, the 2023 data is the "outlier," not the 2022 data— the year that the area met the ozone standard.

When compared to the actual air quality data, Intervenors' narrative grossly mischaracterizes the steady ozone improvements in the Uinta Basin.

5

## II.    UPA Satisfies All the Stay Requirements.

### A.    UPA is Likely to Prevail on the Merits.

UPA is likely to succeed on the merits of its petition for judicial review because EPA: (1) exceeded its statutory authority when it relied on ozone NAAQS exceedances occurring after the Extension Year to deny the extension request; (2) acted arbitrarily and capriciously when it changed the standard by which the extension request would be judged; and (3) failed to adequately justify a rational connection between the facts before it and the denial. *See* Dkt. #10 at 23–33. Intervenors' arguments on each of these points are unpersuasive.

First, Intervenors contend that EPA retains unbounded discretion to deny a request for an attainment date extension for reasons outside of Section 7511(a)(5)'s two enumerated factors. That contention conflicts with longstanding principles mandating that agencies operate strictly within the limits set by Congress. Dkt. #10 at 14–16. To the extent EPA retains discretion to deny an extension even when the statute's requirements are met, *Delaware Dep't of Nat. Resources v. EPA*, 895 F.3d 90, 100 (D.C. Cir. 2018), EPA must exercise that discretion within "the boundaries of [the] delegated authority" established by Congress. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024).

6

Intervenors incorrectly cite *Delaware* as holding Section 7511(a)(5) "grant[s] the EPA discretion to look beyond the two enumerated factors." Opp. 12. In *Delaware*, EPA granted a deadline extension for a multistate region to comply with the NAAQS. 895 F.3d at 93. Delaware, one of four states in the region, challenged EPA's consideration of Delaware's compliance with its own SIP. *Id.* at 100, n.*. The D.C. Circuit "assume[d] that EPA ... retained discretion" to consider Delaware's SIP compliance even though Delaware did not apply for the extension. *Id.* at 100–01 & n.*. That was because SIP compliance *is* an enumerated factor *within* the boundaries defined by Congress in 42 U.S.C. § 7511(a)(5)(A). *See Loper Bright*, 603 U.S. at 395.

Indeed, Intervenors must mischaracterize UPA's argument on EPA's limited authority under Section 7511(a)(5) to create the illusion that EPA possesses broad discretion under the statute. *See* Opp. 11, 13. UPA never argued that EPA is categorically "barred from evaluating additional *air monitoring data* when making an extension determination." *Id.* at 11 (emphasis added); *see id.* at 13 ("additional air data"). UPA does not dispute that, when evaluating whether a State demonstrated compliance with its SIP and an area has experienced ozone

exceedances, EPA may consider air monitoring data. Dkt. #10 at 25–27. However, when EPA considers ozone exceedance data, Section 7511(a)(5) limits EPA to considering the number of exceedances "in the year preceding the Extension Year." *Id.* (quoting 42 U.S.C. § 7511(a)(5)(B)). The statute's express terms forbid EPA from considering ozone exceedances that *post-date* the Extension Year. *Id.*

Intervenors assert that limiting EPA's discretion in any way would lead to absurd results because it would "put EPA in the position of evaluating extension requests without being able to consider whether an area is anywhere near attainment." Opp. 13. Not so. Congress did authorize EPA to evaluate how close an area is to attainment, and specified EPA must do so by looking at the number of exceedances "preceding the Extension Year." 42 U.S.C. § 7511(a)(5)(B); Dkt. #10 at 26–27. Nonetheless, despite Intervenors' claims to the contrary, Opp. 14, EPA's decision to deny the second extension was based on the 2023 ozone exceedance data that post-dated the Extension Year. Dkt. #10 at 25, 106 (EPA admitted "the significance of the 2023 ozone levels … affect[ed] EPA's exercise of discretion here").

Second, Intervenors assert that when EPA arbitrarily changed the standard by which the extension would be decided, it was simply "adjusting to public feedback." Opp. 14. UPA does not dispute that agencies are permitted to change their decision from proposal to final rule based on comments. But here, EPA did not just change its decision; it arbitrarily and capriciously announced a new, heightened standard by which to judge extension requests and did not communicate that heightened standard until it issued the Final Rule. Dkt. #10 at 29–32.

EPA also failed to justify its sudden emphasis on the 2023 anomalous data to deny the extension when, at the time of the Proposed Rule, EPA explained that data was "not determinative." *Id.* at 31–32; 89 Fed. Reg. at 25,226. Intervenors excuse EPA's statutory overreach by asserting EPA was merely responding to comments, including UPA's comments. Opp. 14–15. But Intervenors miss the mark in arguing agencies may ignore clear Congressional directives, and, again, mischaracterize UPA's positions. *See id.* Consistent with the statutory-based arguments in its stay motion, UPA's comments explained that EPA's consideration of the second extension request must be based on ozone data from "the original attainment year and the first extension

year," Dkt. #10 at 52, and that the 2023 data was from "a year not determinative for the second extension approval," *id.* at 55. UPA's comments did not suggest that post-2022 data was relevant to the extension request. *See id.* Instead, that information concerning the steady improvement of ozone conditions in the Uinta Basin, and laws, policies, and voluntary efforts leading to those improvements, was provided to support EPA's proposed conclusion that the area attained the NAAQS by the second extended date (if approved). *See id.* at 52–58.

Third, Intervenors argue that "States cannot rely on federal, state, or voluntary measures that are external to the SIP to achieve attainment." Opp. 18. There is no ozone SIP for the Uinta Basin but, this argument is beside the point. UPA did not identify these measures to argue that the area attained the NAAQS; instead, UPA identified these measures as assurances of why a stay will not harm the public—these measures are reducing ozone concentrations without the Final Rule.

Lastly, Intervenors do not address UPA's argument that EPA failed to justify its departure from its previous interpretations of Section 7511(a)(5), Dkt. #10 at 18–20, and thus concede UPA will succeed on the merits on this point, *see Darren Patterson Christian Acad. v. Roy*, 699 F.

Supp. 3d 1163, 1183 (D. Colo. 2023) (where defendants made "no argument on the merits for purposes of the preliminary injunction motion," the court found they "effectively stipulated" to plaintiff's merits arguments (citing *Verlo v. Martinez*, 820 F.3d 1113, 1130–32 (10th Cir. 2016))).

### B.     UPA's Members Will Suffer Irreparable Harm Absent a Stay.

UPA's stay motion and declarations demonstrate that the Final Rule causes immediate and ongoing irreparable harm to UPA's members. Dkt. #10 at 34–36, 151–234. These harms flow directly from both the Final Rule's Moderate reclassification and a forthcoming Serious reclassification, which—as Intervenors acknowledge, Opp. 5—is required under the CAA.

Intervenors argue that these harms are "not imminent" because (1) UPA members' harms related to imposition of Reasonably Available Control Technology ("RACT") and Reasonable Further Progress ("RFP") will not occur until Utah's SIP is finalized, and (2) reclassification to Serious is not certain. Opp. 20–21. Intervenors are wrong on both points.

First, although RACT and RFP will not be required until Utah finalizes its SIP, UPA's members must begin compliance efforts now.

There are multi-year lead times to design, procure, install, test, and calibrate new equipment and UPA's members must expend substantial sums to meet future compliance obligations. Dkt. #10 at 161. Additionally, sources must develop and submit RACT analyses to the State as the State begins development of its SIP. *Id.* at 210. This RACT analysis itself is costly and time consuming. *Id.* at 162–63.

Second, although the Final Rule did not *directly* reclassify the Uinta Basin to a Serious nonattainment area, because the deadline for Moderate nonattainment areas to attain the ozone standard already passed, the Final Rule's reclassification triggered a statutory duty for EPA to reclassify the Uinta Basin to Serious by February 3, 2025. 42 U.S.C. § 7511(b)(2); 89 Fed. Reg. at 101,487. Indeed, Intervenor Center for Biological Diversity sent EPA a Notice of Intent to Sue under the CAA for EPA's failure to reclassify the Uinta Basin to Serious on that date. *See* Att. 2. Thus, the legal consequences and harms flowing from the Final Rule are occurring now and, absent a judicial stay, will persist.

### C.    A Stay Will Not Harm Intervenors.

Intervenors assert that they will suffer harms from "delayed" ozone reductions if the Court grants a stay. Opp. 24. They assert the resulting

"excess ozone" could cause detrimental health effects, which "can be irreparable." *Id*. These assertions are speculative and ignore the steadily declining ozone concentrations in the Uinta Basin. *See supra* Section I. In addition, Intervenors fail to provide any support for their claim that a stay will last "for years" while EPA reconsiders the Final Rule. *See* Opp. 24–25. A stay will not slow the pace of air quality improvement nor cause an increase in ozone concentrations in the Uinta Basin.

**D.    The Public Interest Favors a Stay.**

A stay is in the public interest. Dkt. #10 at 37–38. Intervenors merely argue that the Final Rule is aimed at reducing ozone and, without the Final Rule, the public will be harmed by "excess ozone pollution." *See* Opp. 25. That argument misses the mark.

First, again, Intervenors ignore the record data showing a steady decline in ozone concentration in the Uinta Basin. Second, of course, an EPA CAA action is aimed at improving air quality. But if the mere fact that a rule purports to benefit public health can overcome a stay, EPA's rules would be immune to stays pending judicial review. That's not the case. *See Ohio v. EPA,* 603 U.S. 279, 300 (2024) (staying EPA's federal plan addressing ozone transport); *UPA v. EPA*, No. 25-9520, Dkt. #24,

Order (10th Cir. Apr. 30, 2025) (staying EPA's rule addressing ozone NAAQS) (unpublished), Att. 3.

Intervenors acknowledge the significant revenue generated by oil and gas development in the Uinta Basin, Opp. 23, which directly benefits Uintah and Duchesne Counties, the Ute Indian Tribe, and neighboring communities that rely on the industry's revenues for critical infrastructure projects, *see* Dkt. #10 at 37. Yet, Intervenors entirely ignore these benefits when discussing the public interest. Opp. 25–26.

Impeding the ability of sources to competitively develop oil and gas resources in the Uinta Basin is against the public interest. Dkt. #10 at 37–38. Conversely, a stay ensures that UPA's members can continue to operate, employ Utahns that work in the industry, and benefit the State, Counties, the Tribe, and communities who depend on the industry's funds. *Id.*

A stay is in the public interest because it will maintain the status quo while EPA reconsiders the Final Rule, *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 360 (10th Cir. 1986), and avoid regulatory whiplash, *Wyoming v. United States DOI*, 366 F. Supp. 3d 1284, 1292 (D. Wyo. 2018).

**CONCLUSION**

The Court should stay EPA's Final Rule.

Dated: May 19, 2025.

> Respectfully submitted,
>
> */s/ Kristina (Tina) R. Van Bockern*
> Kristina (Tina) R. Van Bockern
> HOLLAND & HART LLP
> 555 Seventeenth Street, Suite 3200
> Denver, CO 80202
> Ph. 303-295-8107
> trvanbockern@hollandhart.com
>
> Emily C. Schilling
> Sydney J. Sell
> Andrew P. Revelle
> HOLLAND & HART LLP
> 222 South Main Street, Suite 2200
> Salt Lake City, UT 84101
> Ph. 801-799-5753
> ecschilling@hollandhart.com
> sjsell@hollandhart.com
> aprevelle@hollandhart.com
>
> *Attorneys for Petitioner Utah*
> *Petroleum Association*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the format and word limit of Fed. R. App. P. 27(d)(1)-(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,598 words. This document also complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated: May 19, 2025

*/s/ Kristina (Tina) R. Van Bockern*

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to Fed. R. App. P. 25(c), that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

Dated: May 19, 2025

*/s/ Kristina (Tina) R. Van Bockern*

# ATTACHMENTS

34852763

**Attachment 1**
Declaration of Marise Textor, Utah Petroleum Association

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| UTAH PETROLEUM ASSOCIATION, ) ) | |
| Petitioner, ) ) | |
| v.  ) ) | Case No. 25-9507 |
| U.S. ENVIRONMENTAL ) PROTECTION AGENCY and ) LEE ZELDIN, Administrator, ) U.S. EPA, ) ) ) | |
| Respondents. ) | |

---

## DECLARATION OF MARISE TEXTOR ON BEHALF OF THE UTAH PETROLEUM ASSOCATION IN SUPPORT OF ITS REPLY SUPPORTING ITS MOTION TO STAY THE FINAL RULE

---

I, Marise Lada Textor, hereby declare and state that the following is true and correct to the best of my knowledge, information, and belief.

1.    I am an environmental, health, and safety consultant who advises the Utah Petroleum Association ("UPA"), a statewide oil and gas trade association established in 1958, representing companies involved in all aspects of Utah's oil and gas industry. I have advised UPA on air policy for approximately five years. I am over the age of 18 years and am competent to testify concerning the matters of this declaration.

1

2.    I hold a Bachelor of Science and a Master of Science in Chemical Engineering. Prior to my work as a consultant, I served as a senior regulatory director and manager for leading companies in the oil and gas industry, including Marathon Petroleum Corporation, Andeavor, Western Refining, and Chevron.

3.    As an adviser to UPA, I consult with UPA and its member companies on federal and state legislative and regulatory issues regarding air quality and the Clean Air Act ("CAA").

4.    This declaration is submitted in support of UPA's motion to stay EPA's Final Rule titled "Denial of Request for Attainment Date Extension, Finding of Failure to Attain, and Reclassification of an Area in Utah as Moderate for the 2015 Ozone National Ambient Air Quality Standards," at 89 Fed. Reg. 101,483 (Dec. 16, 2024) (the "Final Rule"). Through this Final Rule, EPA (1) denied Utah's and the Ute Indian Tribe's requests for a second extension of the attainment date for the Uinta Basin, (2) determined that the Uinta Basin did not attain the 2015 National Ambient Air Quality Standards for ozone ("2015 ozone NAAQS" or "ozone standard") by the CAA's applicable attainment date, and

(3) reclassified the Uinta Basin as a "Moderate" nonattainment area, which became effective on January 15, 2025.

**Background**

5.    On October 26, 2015, EPA lowered the 8-hour ozone NAAQS to 70 parts per billion ("ppb"). 80 Fed. Reg. 65,292 (Oct. 26, 2015).

6.    Effective August 3, 2018, EPA classified the Uinta Basin as a Marginal nonattainment area with an attainment date of August 3, 2021. 83 Fed. Reg. 25,776, 25,837 (June 4, 2018); 83 Fed. Reg. 10,376, 10,380 (Mar. 9, 2018).

7.    The metric for measuring ozone concentrations and determining if an area attains the ozone standard is the "design value"— the 3-year average of the annual fourth highest daily maximum 8-hour average ozone concentration. 89 Fed. Reg. 25,223, 25,224, n.1 (Apr. 10, 2024). The design value is based on three full calendar years of data. *Id.* at 25,224.  The design value calculated with the three years of data prior to the year of the attainment date determines whether the area attained the ozone standard by the attainment date.

8.    EPA granted Utah's and the Ute Indian Tribe's first request to extend the attainment date for the Uinta Basin, establishing August

3

3, 2022, as the applicable attainment date. 87 Fed. Reg. 60,897, 60,902 (Oct. 7, 2022).

9.    EPA originally proposed to grant Utah's and the Ute Indian Tribe's second extension request, which would have established August 3, 2023, as the new attainment date. 89 Fed. Reg. 25,223 (April 10, 2024) (the "Proposed Rule"). In the same rulemaking, EPA also proposed to find that the Uinta Basin attained the ozone standard by this attainment date (based on the three-year averaging period from 2020-2022). *Id.*

10.    While EPA denied the second extension request in the Final Rule, 89 Fed. Reg. at 101,483, EPA granted reconsideration of the Final Rule on February 25, 2025, Dkt. #22 at ¶ 4, Ex. 2. As a result, EPA is reconsidering the denial of the second extension request, the determination that the Uinta Basin did not attain the ozone standard, and the reclassification of the area to Moderate nonattainment. *Id.* EPA explained that it intends to undertake a new notice and comment rulemaking process to address the matter. *Id.*

11.    Due to its elevated terrain surrounding a low basin coupled with wintertime snowpack and temperature inversions, the Uinta Basin primarily experiences higher ozone concentrations in the winter. 89 Fed.

Reg. at 25,226–27; 89 Fed. Reg. at 101,485. Accordingly, exceedances of the 2015 ozone NAAQS on individual days primarily occur in the winter in the Uinta Basin.

**Updated Ozone Data**

12.    In its comments in support of the Proposed Rule, UPA included a chart of the design values for the Uinta Basin from 2013 through 2023 as well as the number of exceedances of the 2015 ozone NAAQS during individual 8-hour periods each year. Dkt. #10 at 54.

13.    Since the Final Rule and the initial briefing in this case, the Utah Division of Air Quality, the Ute Tribe, and the National Park Service each certified the 2024 air quality data for the monitors that they respectively operate in the Uinta Basin. Although these entities have not yet certified the 2025 data, the 2025 winter ozone season for the Uinta Basin is complete.

14.    Below is an updated version of UPA's chart including the data from 2024 and 2025.[1]

_____

[1] All data was obtained from the EPA website for air quality data at https://www.epa.gov/outdoor-air-quality-data and the EPA website for design values at https://www.epa.gov/air-trends/air-quality-design-values. The chart excludes data that EPA identified as "exceptional events data," which EPA is required to exclude from determinations



**UB Air Quality, 2013 though Winter 2024**

15.    As shown on the chart, the ozone design value in the Uinta Basin (shown in red) has been steadily improving towards the 2015 ozone NAAQS since the standard was established. The area met the standard during the three-year averaging period from 2020-2022. For the purpose of EPA's reconsideration of the Final Rule, this is the relevant averaging period for determining whether the Uinta Basin attained the ozone standard by the second extended attainment date.

16.    As discussed at length by EPA in the Proposed Rule and the Final Rule, as well as by UPA in its prior briefing in this case and its comments on the Proposed Rule, the Uinta Basin experienced a rare and

---

regarding exceedances and attainment of the NAAQS. 42 U.S.C. § 7619(b)(3)(B)(iv); 40 C.F.R. § 50.14(b)(1).

extremely high snow year in 2023 which greatly increased the formation of ozone and resulted in a high number of individual exceedances of the ozone standard, in contrast to the longstanding trend of improving air quality. EPA acknowledged in its Response to Comments that 2023 was one of the two highest snow years in the Uinta Basin in the past fifty years. Dkt. #10, Att. 5.

17.    As depicted in the updated chart, the Uinta Basin returned to its trend of ozone improvement after the anomalously high snow year in 2023. The Uinta Basin experienced individual exceedances of the ozone standard on only three days in 2024 and one day in 2025, year-to-date, and not all monitors showed exceedances.[2] As the design value is based on the *fourth highest* daily maximum 8-hour average ozone concentration, 89 Fed. Reg. at 25,224, n.1 (emphasis added), and the fourth highest daily maximum ozone concentrations for 2024 and 2025 year-to-date did not exceed the ozone standard, these individual exceedances do not contribute to nonattainment of the standard.

---

[2] As noted above, this does not include data that EPA identified as "exceptional events data," which EPA is required to exclude from relevant determinations. 42 U.S.C. § 7619(b)(3)(B)(iv); 40 C.F.R. § 50.14(b)(1).

18.    However, because the design value is based on a three-year averaging period, the spike in ozone concentration in 2023 masked this encouraging ozone data, resulting in a 2024 design value of 76 ppb.

19.    If not for the spike in ozone concentrations in 2023 due to the anomalously high snow year, the design values for 2024 and 2025 would likely demonstrate continued improvement towards long term attainment of the ozone NAAQS.

20.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 19, 2025.

_____

Marise Lada Textor

**Attachment 2**
Center for Biological Diversity, Clean Air Act Notice of Intent to Sue
(February 4, 2025)

CENTER *for* BIOLOGICAL DIVERSITY                              *Saving life on Earth*

February 4, 2025

**VIA ELECTRONIC AND CERTIFIED MAIL**

Administrator Lee Zeldin
United States Environmental Protection Agency
William Jefferson Clinton Building
Mail Code:1101A
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

**Re:    Clean Air Act Notice of Intent to Sue Pursuant to 42 U.S.C. § 7604(b)(2) and 42
        U.S.C. §§ 7509(c)(1)–(2) & 7511(b)(2)(A)–(B) for Failure to "Bump Up" to Serious
        Under the 2015 Ozone NAAQS**

Dear Administrator Zeldin:

On behalf of the Center for Biological Diversity and the Center for Environmental Health
("the Public Interest Groups"), I write to inform you that the Public Interest Groups intend to file
suit against you for "a failure of the Administrator [of the United States Environmental
Protection Agency ("EPA")] to perform any act or duty under this chapter which is not
discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). Specifically, under 42 U.S.C. §§
7509(c)(1) & 7511(b)(2)(A), EPA was required to determine by February 3, 2025, whether the
2015 ozone National Ambient Air Quality Standard ("NAAQS") moderate nonattainment areas
attained the 2015 ozone NAAQS by the August 3, 2024, attainment date. Pursuant to 42 U.S.C.
§§ 7509(c)(2) & 7511(b)(2)(B), EPA is also required to publish notice in the Federal Register of
those determinations, identifying the new classification of areas that failed to attain. As
explained below, EPA has failed to perform these mandatory duties for five areas: the Louisville,
Kentucky-Indiana; Mariposa County, California; Phoenix-Mesa, Arizona; Washington, D.C.-
Maryland-Virginia; and Uinta Basin, Utah, nonattainment areas.

**I.    Ground-Level Ozone Pollution is Harmful to Public Health and the Environment.**

EPA must remedy its violation of this mandatory duty to better protect public health and
native ecosystems from ozone's harmful effects. According to EPA's exhaustive scientific
review, ground-level ozone pollution—commonly referred to as smog[1]—causes "an array of
adverse health effects that range from decreased lung function and respiratory symptoms to more

---

[1] *See, e.g.*, EPA, "Ground-level ozone basics," https://www.epa.gov/ground-level-ozone-pollution/ground-level-
ozone-basics ("Ozone at ground level is a harmful air pollutant, because of its effects on people and the
environment, and it is the main ingredient in 'smog.'").

*Arizona · California · Colorado · Florida · N. Carolina · Nevada · New Mexico · New York · Oregon · Washington, D.C. · La Paz, Mexico*

BiologicalDiversity.org

serious indicators of morbidity," such as emergency department visits and hospital admissions.[2] A recent peer-reviewed medical study found that even short-term exposure to high levels of ground-level ozone increases the risk of death.[3] Those most at risk from ozone pollution are children and older adults; people who are regularly active outside, such as laborers; and individuals with pre-existing lung and heart diseases such as asthma.[4]

Ozone is also harmful to vegetation and ecosystems.[5] Ozone can be especially harmful to sensitive vegetation—including trees such as the black cherry, quaking aspen, white pine, and ponderosa pine—during the growing season.[6] Ozone pollution can indirectly harm soils, water, wildlife, and associated ecosystems, leading to diminished clean air and water.[7] It also contributes to the climate crisis, as ozone is both a greenhouse gas and an inhibitor of plant growth, shrinking the carbon sequestration potential of plants throughout their lifecycles.[8]

## II.    EPA Violated the Clean Air Act by Failing to Make Bump Up Determinations for Areas Classified as Moderate Nonattainment Areas for the 2015 Ozone NAAQS.

Moderate nonattainment areas for the 2015 ozone NAAQS had an attainment date of August 3, 2024. 87 Fed. Reg. 60,897, 60,903 (Oct. 7, 2022); *see also* 89 Fed. Reg. 101,483, 101,484 (Dec. 16, 2024) (denying extension for Uinta Basin, Utah, area). EPA must determine by no later than 6 months after the attainment date whether a nonattainment area attained the NAAQS by its attainment date. 42 U.S.C. §§ 7509(c)(1), 7511(b)(2)(A). Each area that failed to attain by its attainment date will be reclassified by operation of law to the next higher classification. *Id.* § 7511(b)(2)(A). EPA is also required to publish notice in the Federal Register of those determinations and identify the new classification of areas that failed to attain within 6 months of the attainment date. *Id.* §§ 7509(c)(2), 7511(b)(2)(B).

The Louisville, Kentucky-Indiana; Mariposa County, California; Phoenix-Mesa, Arizona; Washington, D.C.-Maryland-Virginia; and Uinta Basin, Utah, areas are moderate nonattainment areas for the 2015 ozone NAAQS.[9] As mentioned above, their attainment date was August 3, 2024. Six months after that date was February 3, 2025. However, it is after February 3, 2025, and EPA has not made or published a determination of whether these moderate nonattainment areas

---

[2] NAAQS for Ozone, 80 Fed. Reg. 65,292, 65,321 (Oct. 26, 2015); see also EPA, "Health Effects of Ozone Pollution," https://www.epa.gov/ground-level-ozone-pollution/health-effects-ozone-pollution.

[3] "Increased exposure to ozone may increase the risk of death," Medical News Today (Feb. 2020), https://www.medicalnewstoday.com/articles/increased-exposure-to-ozone-may-increase-the-risk-of-death#Ozone-pollution, citing Ana M. Vicedo-Cabrera, et al., "Short term association between ozone and mortality: global two stage time series study in 406 locations in 20 countries," BMJ 368 (Feb. 2020), https://www.bmj.com/content/368/bmj.m108.

[4] 80 Fed. Reg. at 65,322.

[5] EPA, "Ecosystem Effects of Ozone Pollution," https://www.epa.gov/ground-level-ozone-pollution/ecosystem-effects-ozone-pollution.

[6] *Id.*

[7] 80 Fed. Reg. at 65,376–79.

[8] *Id.* at 65,370; see generally "Biological Carbon Sequestration," UC Davis, https://climatechange.ucdavis.edu/science/carbon-sequestration/biological/.

[9] EPA Green Book, "8-Hour Ozone (2015) Nonattainment Areas," https://www3.epa.gov/airquality/greenbook/jnc.html (updated Dec. 31, 2024); 87 Fed. Reg. at 60,903 (Uinta Basin).

attained by their attainment date. Thus, EPA is in violation of its mandatory duties in 42 U.S.C. §§ 7509(c)(1)-(2) and 7511(b)(2)(A)-(B).

**III.    Conclusion**

As required by 40 C.F.R. § 54.3, the persons providing this notice are:

Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Attn: Benjamin Rankin
Tel: 202-849-8402
Email: brankin@biologicaldiversity.org

Center for Environmental Health
2201 Broadway, Suite 508
Oakland, CA 94612
Attn: Thomas R. Fox
Tel: 703-832-2233
Email: tom@ceh.org

Please direct all correspondence and communications regarding this matter to the undersigned counsel using the contact information below.

The Public Interest Groups would prefer to resolve this matter without need for litigation. Please contact the undersigned if you would like to discuss a path to resolution. If we do not hear from you within 60 days, we will be forced to assume that you are not interested in settling this matter and will file our complaint.

Sincerely,

*/s/ Benjamin Rankin*

Benjamin Rankin
Legal Fellow, Environmental Health
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
202-849-8402
brankin@biologicaldiversity.org

Ryan Maher
Staff Attorney, Environmental Health
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005

781-325-6303
rmaher@biologicaldiversity.org

*Counsel for Center for Biological Diversity and
Center for Environmental Health*

**Attachment 3**
*UPA v. EPA*, No. 25-9520, Dkt. #24, Order (10th Cir. Apr. 30, 2025)

FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 30, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

STATE OF UTAH, by and through its
Governor, Spencer J. Cox, and its Attorney
General, Derek E. Brown,

      Petitioner,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; LEE ZELDIN,
Administrator, United States
Environmental Protection Agency,

      Respondents.

No. 25-9519
(EPA No. EPA-R08-OAR-2024-0552)
(Environmental Protection Agency)

_____

UTAH PETROLEUM ASSOCIATION,

      Petitioner,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; LEE ZELDIN,
Administrator, United States
Environmental Protection Agency,

      Respondents.

No. 25-9520
(EPA No. EPA-R08-OAR-2024-0552)
(Environmental Protection Agency)

_____

## ORDER

_____

Before **McHUGH** and **MORITZ**, Circuit Judges.

_____

The petitioners in these two appeals seek review of a final rule issued by the Environmental Protection Agency (EPA) titled "Finding of Failure to Attain and Reclassification of an Area in Utah as Serious for the 2015 Ozone National Ambient Air Quality Standards" (Final Rule), 89 Fed. Reg. 97,545 (Dec. 9, 2024). Petitioners have also filed motions to stay the Final Rule pending appeal (the Stay Motions). For the reasons that follow, we grant the Stay Motions.

Federal Rule of Appellate Procedure 18 authorizes a petitioner seeking review of an agency decision or order to move for a stay of the agency decision or order pending judicial review. Such a motion must either "show that moving first before the agency would be impracticable" or "state that, a motion having been made, the agency denied the motion or failed to afford the relief requested and state any reasons given by the agency for its action." Fed. R. App. P. 18(a)(2)(A)(i)–(ii). That requirement has been satisfied in these appeals because it is undisputed petitioners sought, but were denied, a stay of the Final Rule from the EPA.

Stay motions must also, per Tenth Circuit Rule 18.1, address, in relevant part, the following factors: (1) the likelihood of success on appeal; (2) the threat of irreparable harm to the applicant if the stay is not granted; (3) the absence of harm to opposing parties if the stay is granted; and (4) any risk of harm to the public interest. 10th Cir. R. 18.1 (incorporating 10th Cir. R. 8.1). These factors are consistent with the requirements outlined by the Supreme Court for obtaining a stay pending appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (discussing the four factors a court must consider in deciding whether to exercise its discretion and grant a stay pending appeal).

After considering the Stay Motions and the EPA's response to those motions, we conclude petitioners have met their "burden of showing that the circumstances justify" our exercise of discretion to stay the Final Rule pending the outcome of these appeals. *Id.* In particular, as to the two "most critical" factors, petitioners have "made a strong showing that [they are] likely to succeed on the merits," and the EPA does not dispute petitioners' assertions of irreparable harm if the Final Rule is not stayed pending appeal. *Id.* (internal quotation marks omitted).

Accordingly, the Stay Motions are granted and the Final Rule is stayed pending the outcome of these appeals.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk